STATE OF CONNECTICUT *v.* MARK CARVIN OLDS

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued May 7—decision released August 10, 1976

*John R. Williams,* special public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

Barber, J. The defendant was tried to a jury of six on a three-count information charging him with robbery in the first degree, in violation of § 53a-134 (a) (2) of the General Statutes, unlawful restraint in the first degree, in violation of § 53a-95, and assault in the second degree, in violation of § 53a-60 (a) (2). He was found guilty of the lesser included offenses of robbery in the second degree, unlawful restraint in the second degree, and assault in the third degree. On appeal, he has raised seven issues, claiming that the court erred (1) in denying a motion, based upon an alleged withholding of exculpatory evidence by the state, for a mistrial or continuance; (2) in its charge to the jury on the failure of a party to call a witness; (3) in denying a motion to dismiss based upon a claim that the defendant had been illegally incarcerated before trial; (4) in denying the defendant his alleged right to be present during certain stages of the proceedings; (5) in denying a motion to dismiss based upon an allegation that the defendant's mail had been illegally opened while he was in jail pending trial; (6) in denying a motion to dismiss the jury panel based upon a claim that the Connecticut jury selection statutes are unconstitutional; and (7) in denying the defendant his alleged right to trial by a jury of twelve.

I

A brief discussion of the evidence presented at trial will serve to place in context the defendant's claim that the state withheld exculpatory evidence.[1]

---

[1] It should be noted that the defendant's counsel, a special public defender, has not followed our rules of appellate procedure, which require the appellant to include in his brief a statement of facts in narrative form, supported by references to appropriate pages of the trial transcript. Practice Book § 631A. The defendant has instead printed, at state expense, an appendix, 164 pages in length,

The state offered evidence to prove that on August 24, 1973, the defendant and an unidentified companion, armed with shotguns, entered the New Haven apartment of Harry Coe, bound and gagged Coe, took $471 in cash as well as assorted jewelry, and then beat Coe into a state of unconsciousness. The state's case rested primarily upon the testimony of Coe, who testified that on the night of August 24, 1973, he was speaking to a girl friend on the telephone when he heard a knock at his door. He opened the door and two men armed with shotguns forced their way into his apartment. Coe testified that he did not know either of the two men, although he recognized one of them, the defendant, as a man he had seen before. Coe identified the defendant in the courtroom and then described the robbery and beating. He further testified that upon regaining consciousness he returned to the telephone and his girl friend was still on the line.

The defendant did not dispute Coe's testimony that he had been beaten and robbed but did claim that Coe's identification was incorrect. The defendant attempted to prove that Coe was a professional gambler and that his assailants were either Coe's business associates or his friends. Coe's credibility was thus a critical issue at trial.

Before trial, the defendant had moved for disclosure by the state of "[t]he felony record of the victim or any witness or any other information that may be used in a court of law to throw doubt upon the credibility of any victim or witness." The state

consisting almost entirely of verbatim testimony. Since our rules also require the appellant to file a copy of the trial transcript; Practice Book § 633A; the appendix is merely repetitious and serves no useful purpose. Such a deviation from our rules of practice unnecessarily burdens an orderly appellate review. Cf. *State* v. *Brown*, 166 Conn. 203, 353 A.2d 721.

responded to this motion by stating that the felony record of any witness would be made available after the witness had testified. During trial, after the state had rested, the defendant moved for production by the state of any statement in its file made by a witness who had not been called to testify. The defendant commented that any such statement would presumably be exculpatory. The trial court examined the state's file in camera and then, saying it was "bending over backwards," requested the state to give the defendant a copy of a statement given by Sandra Adams, Coe's girl friend, who had been on the telephone during the robbery.

The statement by Miss Adams is in the form of an affidavit and consists of a transcript of questions asked her by a detective and her responses. The statement indicates that on August 24, 1973, Miss Adams was talking on the telephone with Coe when Coe said he had to answer a knock at the door. She remained waiting on the telephone for about fifteen minutes until Coe returned and informed her that he had been robbed. During the fifteen-minute interval, she heard movements but no sounds of a struggle. When asked if Coe sounded as if he knew the individuals who came into the apartment, she replied, "I would say yes." The defendant argued that the statement was exculpatory in that Miss Adams' statement that Coe sounded as if he knew the men who came into the apartment contradicted Coe's testimony that the two men were strangers to him. The defendant, therefore, moved for a continuance which would enable him to subpoena Miss Adams, who was in the military service in California, or, in the alternative, for a mistrial based upon the state's failure to produce the statement in response to the motion for disclosure of

"information that may be used in a court of law to throw doubt upon the credibility of any victim or witness." The court ruled that neither a continuance nor a mistrial would be appropriate and the defendant took an exception.

On appeal, the defendant has vociferously pursued his contention that the nondisclosure by the state of Miss Adams' statement constituted a suppression of material evidence favorable to the accused. He further argues that the nondisclosure resulted from "bad faith" on the part of the state's attorney. His argument rests in large part on the holding in *Brady* v. *Maryland*, 373 U.S. 83, 86, 83 S. Ct. 1194, 10 L. Ed. 2d 215, that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." We are not persuaded, however, that the *Brady* principle is applicable to the present case. "The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." *Moore* v. *Illinois*, 408 U.S. 786, 794–95, 92 S. Ct. 2562, 33 L. Ed. 2d 706; see *State* v. *Moynahan*, 164 Conn. 560, 592, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219. The statement was not "suppressed," as that term is used in *Brady*, since it was in fact made available to the defendant during the course of trial. Nor may the statement be fairly characterized as

"favorable" to the defendant; the limited information it contains is, for the most part, consistent with and supportive of Coe's testimony. The one major inconsistency, Miss Adams' remark that she "would say" it sounded as if Coe knew the persons who entered the apartment, was, as the trial court observed, of doubtful admissibility. Finally, the defendant does not claim that the statement itself is either exculpatory or material, but argues that if the statement had been disclosed, he would have been able to contact Miss Adams, bring her back from California, and, by her testimony, have been able to damage Coe's credibility. The trial court, having deliberately assessed the potential impact of Miss Adams' statement, determined that no sanction, other than disclosure of the information to the defendant, was necessary. See A.B.A. Standards of Discovery and Procedure Before Trial § 4.7 (approved draft, 1970).

Under the circumstances, the court did not abuse its discretion in denying the defendant's motion for a mistrial or a continuance to enable Sandra Adams to be returned to Connecticut. The denial of a motion for a mistrial is a matter within the sound discretion of the trial court. *State* v. *Grayton,* 163 Conn. 104, 112, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495. "The general principle is that a mistrial should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial." *State* v. *Bausman,* 162 Conn. 308, 312, 294 A.2d 312. Even after a trial has concluded, a new trial is not automatically required whenever "a combing of the prosecutors' files . . . has disclosed evidence possibly useful to the defense but not likely to have

changed the verdict." *United States* v. *Keogh,* 391 F.2d 138, 148 (2d Cir.). A new trial is required only when there is a reasonable likelihood that the material or information would have affected the verdict. *Giglio* v. *United States,* 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104. In this case, there was no omission which deprived the defendant of a fair trial. *United States* v. *Agurs,* 427 U.S. 97, 114, 96 S. Ct. 2392, 49 L. Ed. 2d 342.

Nor did the court abuse its discretion in denying the motion for a continuance for a period of weeks. The matter of a continuance, like a motion for a mistrial, is also a matter traditionally within the discretion of the trial judge. *State* v. *Bethea,* 167 Conn. 80, 86–87, 355 A.2d 6. "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar* v. *Sarafite,* 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921.

## II

In its charge, the court instructed the jury that an adverse inference could be drawn from the failure of the state to call Sandra Adams as a witness, if the jury found that she was both available and a witness whom the state would naturally produce. The court commented further that in determining whether Sandra Adams was a witness whom the state would "naturally produce," the jury were to consider whether her testimony would, as the state had argued, have been merely cumulative. In excepting to this portion of the charge, the defendant makes no claim that it is not an accurate statement of the law pertaining to missing wit-

nesses, as set out in *State* v. *Brown,* 169 Conn. 692, 703–706, 364 A.2d 186, and *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598. He does claim, however, that the instructions were misleading because the court "knew" that Miss Adams' testimony, if offered, would not have been merely cumulative, and the court also "knew" that her unavailability was the result of "prosecutorial misconduct."

"The test to be applied to any part of a charge is whether the charge considered as a whole presents the case to the jury so that no injustice will result." *State* v. *Mullings,* 166 Conn. 268, 275, 348 A.2d 645; *State* v. *Annunziato,* 169 Conn. 517, 535, 363 A.2d 1011. A party claiming the benefit of an adverse inference must show that he is entitled to it. *State* v. *Rosa,* 170 Conn. 417, 431, 365 A.2d 1135. In the light of the facts and circumstances discussed in part I of this opinion, the defendant's claim of error in the charge to the jury is without merit.

## III

Before the case was submitted to the jury, the court denied a motion that the information be dismissed, and the defendant has included that denial in a motion in arrest of judgment. See Practice Book § 600; Maltbie, Conn. App. Proc. § 209. The defendant's motion to dismiss alleges that after being bound over to the Superior Court he was held in a correctional center in excess of 45 days without being presented in court, in violation of § 54-53a of the General Statutes.[2] The parties stipulated

---

[2] "[General Statutes] Sec. 54-53a. DETENTION OF PERSONS WHO HAVE NOT MADE BAIL. No person who has not made bail shall be detained in a community correctional center pursuant to the issuance of a bench warrant or for arraignment, sentencing or trial for an offense not punishable by death, for longer than forty-five days,

that April 4, 1974, was the last time the defendant appeared in the Circuit Court before being bound over to the Superior Court, that he first appeared in the Superior Court on June 25, 1974, requesting a change of counsel, that the case was set down for a plea on June 28, 1974, and that a plea was taken on July 2, 1974.

The right to be released on bail upon sufficient security is a fundamental constitutional right, and any order made by the trial court denying or fixing the amount of bail is subject to appellate review. Conn. Const., art. I § 8; Practice Book § 694. On the other hand, § 54-53a purports to mandate only the procedure for implementing this right and provides no sanction in the event there is a violation. The denial of any right under the statute does not involve a fundamental constitutional right, and the defendant has made no showing of prejudice which would entitle him to a dismissal of the information. On July 2, 1974, the defendant filed a motion requesting that he be released without bail or, in the alternative, that his bail be fixed at $2500. The motion was denied and on the same day he entered a plea of not guilty. It was not until August 22, 1974, that the defendant filed the motion to dismiss. It does not appear that the defendant at any previous time requested that the amount of his bail be reviewed. The court did not err in denying the motion to dismiss.

unless at the expiration of such forty-five days he is presented to the court having cognizance of the offense. On each such presentment, such court may reduce, modify or discharge such bail, or may for cause shown remand such person to the custody of the commissioner of correction. On the expiration of each successive forty-five day period, such person may again by motion be presented to the court for such purpose."

## IV

After motions for reduction of bail and for discovery had been filed by the defendant and decided by the court, as well as a plea entered, and after a lapse of more than ten days ordered by the court for filing preliminary motions, new counsel for the defendant entered the case and filed several pretrial motions, among them motions to quash, for production, for trial by a jury of twelve, and a motion to reduce bond. A request to have the defendant brought into court when these motions were argued was denied. No evidence was taken by the court, nor was any cogent reason advanced in support of the request other than that the defendant had requested it.

The question of a defendant's right to be present during a discussion of questions of law is one of first impression in this state. As a general rule, an accused has a constitutional right to be present at all stages of his trial but not at a conference or argument on a question of law. *Deschenes* v. *United States*, 224 F.2d 688 (10th Cir.); *People* v. *Teitelbaum*, 163 Cal. App. 2d 184, 329 P.2d 157, cert. denied, 359 U.S. 206, 79 S. Ct. 738, 3 L. Ed. 2d 759; *State* v. *Auld*, 2 N.J. 426, 67 A.2d 175; Rule 43 (c), Fed. Rules Crim. Proc.; Practice Book § 2381; see also 21 Am. Jur. 2d, Criminal Law, §§ 288, 289, 290; 23 C.J.S., Criminal Law, §§ 973, 974; note, 85 A.L.R.2d 1111. Although some courts have held that a defendant has a right to be present even when questions of law are discussed; see, e.g., *State* v. *Delzoppo*, 86 Ohio App. 381, 92 N.E.2d 410; *State* v. *Vance*, 124 S.E.2d 252 (W. Va.); the better view would seem to be that there is no such absolute right; *United States* v. *Johnson*, 129 F.2d 954

(3d Cir.); especially when, as in the present case, the question of law is argued prior to the selection of the jury and the commencement of trial. Cf. *Talton* v. *Warden,* 171 Conn. 378, 382, 370 A.2d 965. The question should be whether the defendant's presence bears "a relation, reasonably substantial, to his opportunity to defend." *Snyder* v. *Massachusetts,* 291 U.S. 97, 106, 54 S. Ct. 330, 78 L. Ed. 674. On the record before us, there would have been no "advantage" to having the defendant present when the motions in question were discussed. Id., 108. The court properly refused the defendant's request to be present during the argument of preliminary motions.

## V

As the trial was about to begin, the defendant moved to dismiss the information, claiming that privileged communications from his attorney had been intercepted by agents of the state. The defendant testified that mail addressed to him by his attorney, characterized as containing trial strategy, had been opened outside of the defendant's presence at the New Haven community correctional center, where he was being held pending trial. None of the letters which the defendant claims were opened was brought into court, nor was any evidence offered that the contents had been read or, if so, under what circumstances.

Ordinarily, such claims as were advanced by the defendant on this motion are made in civil rights cases. See, e.g., *Wolff* v. *McDonnell,* 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935; *Sostre* v. *McGinnis,* 442 F.2d 178 (2d Cir.), cert. denied sub nom. *Oswald* v. *Sostre,* 405 U.S. 978, 92 S. Ct. 1190, 31 L. Ed. 2d 254; cf. *Procunier* v. *Martinez,* 416 U.S. 396, 94 S. Ct. 1800, 40 L. Ed. 2d 224. In *Wolff* it is

stated (p. 577) that: "The possibility that contraband will be enclosed in letters, even those from apparent attorneys, surely warrants prison officials' opening the letters." The opinion, however, leaves unanswered whether an inmate must be present when mail from an attorney is being inspected as is required in some institutions. In this case, the evidence adduced by the defendant, upon the claim of the defendant in court, was clearly insufficient to warrant the granting of the relief requested. The court did not err in denying the motion to dismiss.

## VI

The defendant challenged the jury array on the ground that the Connecticut jury selection statutes, §§ 51-218 through 51-221 of the General Statutes, violate the due process and equal protection clauses of the fourteenth amendment to the constitution of the United States. A motion to dismiss the jury panel was denied as was a motion in arrest of judgment assigning this as error. See Practice Book § 600; Maltbie, Conn. App. Proc. § 209.

The defendant's claims that the jury selection statutes are too vague, that they discriminate against women and felons, and that they deny a defendant the right to be tried before a jury drawn from a fair cross section of his community, require little discussion. In *State* v. *Brown*, 169 Conn. 692, 696–99, 364 A.2d 186, these same claims, raised in language identical to that found in the present defendant's brief, were discussed at length, and the statutes in question were held to be constitutionally valid on their face.[3] The defendant has

[3] The defendant's counsel in the present case also represented the defendant in *State* v. *Brown*, 169 Conn. 692, 696–99, 364 A.2d 186. In fairness to him, it should be noted that our decision in *State* v. *Brown*, supra, was released after he had filed his brief in this appeal.

presented no arguments which would cause us to reassess our holding in *State* v. *Brown,* supra, nor has he offered any evidence that the application of these statutes has resulted, in his case, in a jury array that was other than a "fair cross section of the community."

## VII

The defendant's final claim is that the court erred in denying his motion for trial by a jury of twelve. He argues that § 54-82 of the General Statutes,[4] which provides for trial by a jury of six in all criminal cases except those involving capital offenses, is invalid because it is contrary to the separation of powers provision of article second of the constitution of Connecticut.

The defendant does not claim that either the United States constitution or the Connecticut constitution guarantees a right to trial by a jury of twelve. The United States Supreme Court has held that although the sixth amendment, as applied to the states through the fourteenth, guarantees a right to trial by jury in all state criminal cases other than those involving petty offenses; *Duncan* v. *Louisiana,* 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491, reh. denied, 392 U.S. 947, 88 S. Ct. 2270, 20 L. Ed. 2d 1412; it does not require that the jury in such cases consist of twelve members. *Williams* v. *Florida,* 399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed. 2d 446. Article IV of the amendments to the constitution of Connecticut, adopted in 1972, reads, in pertinent part, as follows: "The right of trial

---

[4] "[General Statutes] Sec. 54-82. ACCUSED'S ELECTION OF TRIAL BY COURT OR BY JURY. . . . If the party accused does not elect to be tried by the court, he shall be tried by a jury of six except that no person shall, for a capital offense, be tried by a jury of less than twelve without his consent."

by jury shall remain inviolate, the number of such jurors, which shall not be less than six, *to be established by law*." (Emphasis added.)[5] The defendant does claim, however, that any reduction in the number of jurors must, under our constitutional form of government, be implemented by judicial action rather than by the General Assembly.

The defendant first argues that, in accordance with our recent decision in *Szarwak* v. *Warden,* 167 Conn. 10, 355 A.2d 49, the phrase "to be established by law" as used in article IV of the amendment, must be construed as meaning "to be established by the judiciary." In *Szarwak,* we considered the meaning of a similar phrase, "to be defined by law," as used in article fifth of the constitution of Connecticut: "Sec. 1. The judicial power of the state shall be vested in a supreme court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law." We held that the phrase "shall be defined by law" did not vest the General Assembly with the power to create "lower courts" with so great a jurisdiction "as materially to detract from the essential characteristics of the Superior Court" as that court has historically been constituted. *Szarwak* v. *Warden,* supra, 40, quoting from *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 140, 32 A.2d 547.

---

[5] The full text of the fourth amendment reads as follows: "[Conn. Const., amend. IV] Section 19 of article first of the constitution is amended to read as follows: The right of trial by jury shall remain inviolate, the number of such jurors, which shall not be less than six, to be established by law; but no person shall, for a capital offense, be tried by a jury of less than twelve jurors without his consent. In civil and criminal actions tried by a jury, the parties shall have the right to challenge jurors peremptorily, the number of such challenges to be established by law. The right to question each juror individually by counsel shall be inviolate."

We did not hold, as the defendant contends, that the phrase "by law," as used in article fifth, meant "by the Superior Court"; we simply held that the phrase must be construed with regard to maintaining the integrity of the Superior Court and that its meaning must be limited to prevent the General Assembly from interfering with the orderly performance by the Superior Court of its inherent functions.[6] *State* v. *Audet*, 170 Conn. 337, 342, 365 A.2d 1082.

The defendant argues that the same considerations which compelled us to limit the phrase "by law" as used in article fifth also compel an interpretation of the phrase "by law," as used in amendment IV to the state constitution, to mean "by the judicial department." He contends that determining the number of jurors is an inherent function of the judicial department and that § 54-82 therefore constitutes an attempt by the General Assembly to invade the province of the judiciary, contrary to the mandate of article second of the state constitution, which provides for a separation of powers among the three branches of government.[7] Recently, in *State* v. *Clemente,* 166 Conn. 501, 508–11, 353 A.2d 723, we reiterated our often-stated holding that article second prohibits the legislature from exercising those powers which are inherently within the sphere of the judiciary. See *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 597, 37 A. 1080.

[6] Recently we noted that "the phrase 'established law' within the definition of 'injury' encompasses legislative law as well as judge-made law." *Gentile* v. *Altermatt,* 169 Conn. 267, 382–87, 363 A.2d 1.

[7] "[Conn. Const., art. II] The powers of government shall be divided into three distinct departments, and each of them· confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another."

We then set out a quite specific test for determining when a legislative act impermissibly infringes upon the judiciary: "To be unconstitutional in this context, a statute must not only deal with subject matter which is within the judicial power, but it must operate in an area which lies *exclusively* under the control of the courts." (Emphasis added.) *State v. Clemente,* supra, 510–11.

We are not persuaded that the determination of the number of jurors is a matter "which lies exclusively under the control of the courts." It is doubtful whether the setting of the number of jurors has ever been a function of the judiciary, whether under English common law, in this nation, or in this state. See *Williams* v. *Florida,* 399 U.S. 78, 87–103, nn. 19–45, 90 S. Ct. 1893, 26 L. Ed. 2d 446; *State v. Gannon,* 75 Conn. 206, 219–37, 52 A. 727; Phillips, "A Jury of Six in All Cases," 30 Conn. B.J. 354, 358 n.7. The General Assembly has taken an active role in controlling the number of jurors in Connecticut since colonial days; see, e.g., Statutes, 1784, p. 2; Cum. Sup. 1955, § 3326d (General Statutes § 54-82); which measures have traditionally been followed by the courts. See *State* v. *Perrella,* 144 Conn. 228, 129 A.2d 226; 1 Swift's Digest, p. 760 (1849 Rev.).

"It is well settled that a . . . [party] who attacks a statute on constitutional grounds has no easy burden." *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678. "We approach the question with great caution, examine it with infinite care, make every presumption and intendment in favor of validity, and sustain the act unless its invalidity is, in our judgment, beyond a reasonable doubt."

*Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599. The defendant has not sustained his burden of establishing that § 54-82 impermissibly infringes upon the powers of the judiciary.

There is no error.

In this opinion the other judges concurred.