STATE OF CONNECTICUT *v.* DANIEL J. WEBB
(3912)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued June 4—decision released August 26, 1986

*Suzanne Zitser,* assistant public defender, with whom, on the brief, were *Joette Katz,* public defender, and *Joseph G. Bruckmann,* assistant public defender, for the appellant (defendant).

*Eric I. B. Beller,* special assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *James E. Thomas,* assistant state's attorney, and *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

HULL, J. The defendant was charged with sexual assault in the first degree in violation of General Statutes § 53a-70, unlawful restraint in the first degree in violation of General Statutes § 53a-95 and robbery in the third degree in violation of General Statutes § 53a-136,[1] arising out of a series of events occurring in Hartford on February 17, 1984. Prior to trial, the defendant requested that the state disclose the essential facts claimed to constitute the offense pursuant to Practice Book § 625.[2] In response, the state specified

---

[1] General Statutes § 53a-136 provides in part: "(a) A person is guilty of robbery in the third degree when he commits robbery."

[2] Practice Book § 625 provides: "Whenever the information charges the offense only by referring to the statute which is alleged to have been vio-

the factual background for the charges against the defendant as follows: "On February 17, 1984, at about 8:00 p.m. in the Civic Center Garage, Hartford, the defendant Webb forced his way into the auto of the female victim and forced her to have vaginal sexual intercourse with him and touched her breasts then forced her to sign over to him her pay check and then eventually drove her around parts of North Hartford, ending up on Tower Avenue about 11:00 p.m."

After a trial to a jury, the defendant was convicted as charged. He now appeals, challenging the judgment of conviction of robbery in the third degree only, claiming that the trial court erred in three respects: (1) in failing to submit to the jury an information amended by the statement of essential facts pursuant to Practice Book § 625, and in instructing the jury on General Statutes § 53a-133 (1) which he claims related to and defined conduct totally distinct from that specified in the statement of essential facts; (2) in denying his motion for judgment of acquittal because the state failed to present sufficient evidence to support his conviction for robbery in the third degree; and (3) in charging the jury on reasonable doubt. We find no error.

The pertinent facts which the jury could reasonably have found are as follow: At 8 p.m., on February 17, 1984, the victim, twenty-nine years of age, went to get her car in the Hartford Civic Center garage. As she was getting ready to exit the garage, the defendant came up to the driver's side of her car and forced her into the middle of the car. He then ripped at her clothing, partially undressed her, threatened to kill her, and forced her to have vaginal intercourse with him and to perform fellatio on him.

lated, the prosecuting authority, upon written request of the defendant, shall as of course amend the information by adding or annexing thereto a statement of the essential facts claimed to constitute the offense charged. Such request shall be made within ten days following arraignment."

During the hour that the defendant was engaged in sexual intercourse with the victim, he searched through her pockets demanding to know what they contained. In order to get answers to this and other questions, he slapped her face. The victim told the defendant that her pay check was among her belongings. While the victim was still restrained in the garage, the defendant became concerned about how he could leave before the victim encountered the security guard or the police. There was a conversation of forty-five minutes to an hour during which the defendant pleaded with and threatened the victim in order to get her not to report him. The defendant then asked the woman if she had any money or bank cards. The victim was still afraid at this time. In order to get the defendant out of the car, she told him she would sign her pay check over to him if he would just go and let her be. She signed over the check and gave it to the defendant. He still wouldn't let her leave the car, however, and when she tried to get out, he pulled her back in, causing her to hit her head. He told her not to try to leave again. The defendant and the victim left the garage together with the victim still fearful and under restraint. The defendant drove the car around certain streets and, when he stopped the car, the victim got out of it and screamed at him until he got out of the car. Her check was returned to her by the defendant's trial counsel.

At trial, the defendant admitted that he was with the victim the night in question and that he wrongfully retained the payroll check that she endorsed to him for the purpose of cashing it. He denied, however, sexually assaulting or physically injuring her, or using any force or threat of force to obtain or retain the check. He claimed that he met the victim and walked with her to her car in the garage and that she asked him to back her car out because it was in a tight spot. He testified that she wanted money to buy cocaine and, as part of

a con game to acquire her check, he agreed to get the check cashed. He claimed that he got out of the victim's car without incident and put the check in his back pocket. He contended that they exchanged phone numbers and he gave her a brief kiss and said he would see her later.

The defendant's first claim is that the trial court erred in instructing the jury on General Statutes § 53a-133 (1) which he claims concerns conduct totally distinct from that specified in the statement of essential facts. The defendant concedes that no exception was taken to the charge on this ground. He asserts that this issue is, nevertheless, reviewable under the fundamental rights—fair trial exception of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). In support of his claim of reviewability, the defendant asserts that by filing the statement of essential facts, in which it specified that the "defendant forced [the victim] to sign over to him her pay check," the state eliminated the possibility of convicting him on proof that he used or threatened force for the purpose of "[p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking," as prohibited by General Statutes § 53a-133 (1). The defendant argues that the phrase used in the statement of essential facts describes the conduct prohibited by subsection (2) only and, therefore, that the state was limited to proving that he used or threatened force for the purpose of "(2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny," as prohibited by General Statutes § 53a-133 (2). Accordingly, he claims that when the trial court charged the jury using the definition of robbery in § 53a-133 (1), it instructed the jury under a statute with which he was not charged in violation of his due process rights.

The defendant's claim, thus presented, does implicate a fundamental constitutional right, and the record is sufficient for us to review the merits of the claim. Accordingly, the next question we must answer is whether there was in fact a deprivation of that constitutional right. See *State* v. *Newton,* 8 Conn. App. 528, 534, 513 A.2d 1261 (1986). We conclude that there was not. The defendant's argument amounts to little more than semantic overkill. A common sense analysis illustrates that the two subsections overlap. In the first place, we find it difficult to distinguish the conduct prohibited by the two subsections of § 53a-133. "[P]reventing or overcoming resistance to the taking of the property" is at least a first cousin of "compelling the owner of such property . . . to deliver up the property." Accordingly, while we concede that the language "forced her to sign over to him her pay check" is covered by subsection (2), that does not logically lead to the conclusion that subsection (1) is excluded. On the contrary, the language in the statement of essential facts just as clearly relates to the use or threat of use of force to prevent or overcome resistance to the taking of property as it does to the use of force to compel delivery of the property. Thus, logically, the statement of essential facts charged the defendant under both General Statutes §§ 53a-133 (1) and (2).

In *State* v. *Secore,* 194 Conn. 692, 485 A.2d 1280 (1984), our Supreme Court faced a claim similar to that raised here. The defendant had been indicted under subsection (1) of General Statutes (Rev. to 1979) § 53a-70 (a) for sexual assault by the use of force. This indictment was replaced by an information charging the defendant under subsection (2) with sexual assault "by the threat of use of force." The defendant claimed that because these constituted separate offenses, the indictment for one could not be replaced by an information charging the other, but only by a new indictment.

Accordingly, the issue before our Supreme Court was whether § 53a-70 (a) describes two separate crimes. The court concluded "that the language of § 53a-70 divides the statute, not into two crimes, but into two methods of committing the same crime; see *State* v. *Wallace*, 181 Conn. 237, 239, 435 A.2d 20 (1980); and that the indictment substitution made by the state . . . involved a matter of form, not substance." Id., 698. The court concluded, therefore, that "both the indictment and the substitute information charge the defendant with only one crime, sexual assault in the first degree;" id.; since compulsion by the use of force and compulsion by the threat of force are simply two methods of committing one offense. In this case, where the two subsections involved are almost indistinguishable, there is no question that the defendant's conviction under either subsection was consistent with the statement of essential facts. Accordingly, we conclude that the defendant was not deprived of his right to due process.

The defendant also argues that the *combination* of the trial court's instruction on General Statutes § 53a-133 (1) and its submission of the information which, contrary to the mandates of Practice Book § 625, did not incorporate the essential facts, deprived him of his fundamental right to due process. He concedes, however, that "had the trial court ultimately provided correct instruction that incorporated the robbery offense as alleged and particularized," the noncompliance with Practice Book § 625 would have been harmless. We have already concluded that the trial court did provide correct instruction as particularized by the statement of essential facts. Accordingly, this claim falls with the first claim on which it is dependent.[3]

[3] We note that the defendant did not claim lack of notice of the nature of the charges, nor could he. Without specifically ruling on the interplay between a bill of particulars and a request for essential facts, we note that the function of the bill of particulars in a criminal case is to provide infor-

The defendant's second claim is that because the victim "volunteered" her paycheck, there was insufficient evidence presented that he used force *during* the course of committing larceny as required to sustain a conviction under General Statutes § 53a-133. Additionally, he contends that there was insufficient evidence that any use of force *was for the purpose of* committing a larceny. The principles governing appellate review of a claim of error challenging the sufficiency of the evidence to support the jury's verdict are well settled in this state. " ' "[T]he issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . . " ' *State* v. *Gaynor,* 182 Conn. 501, 503, 438 A.2d 479 (1980), quoting *State* v. *Festo,* 181 Conn. 254, 259, 435 A.2d 38 (1980)." *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Candito,* 4 Conn. App. 154, 157, 493 A.2d 250 (1985). An appellate court addressing an insufficiency claim must construe the evidence presented at the trial in the light most favorable to sustaining the jury's ver-

mation fairly necessary to enable the accused to understand and prepare his defense against the charges without prejudicial surprise at trial. *State* v. *Coleman,* 167 Conn. 260, 269, 355 A.2d 11 (1974); see also, *State* v. *Roque,* 190 Conn. 143, 154-55, 460 A.2d 26 (1983). A request for essential facts, too, is related to giving the defendant sufficient notice of the charges in question. The defendant, of course, enjoys a constitutional right to such notice. *State* v. *Newton,* 8 Conn. App. 528, 532, 513 A.2d 1261 (1986). In *State* v. *Roque,* supra, however, our Supreme Court stated that " ' "if the state's pleadings . . . informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty." *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979);' *State* v. *Ballas,* [180 Conn. 662, 664, 433 A.2d 989 (1980)]." Here, these requirements were fully met by the information and the statement of essential facts.

dict. *State* v. *Stankowski,* supra, 126; *State* v. *Chetcuti,*
173 Conn. 165, 172, 377 A.2d 263 (1977).

Under these standards, the defendant's claim of
insufficiency of the evidence borders on the frivolous.
We will not rehash the overwhelming evidence before
the jury that the defendant inflicted a reign of terror
on the victim, starting in the Civic Center garage. Both
the direct evidence and the reasonable inferences to
be drawn therefrom present a compelling picture of
intimidation and coercion. The victim was sexually
assaulted and restrained for over two hours. She was
choked and threatened with death. She was slapped in
the face. She was threatened with abduction to New
York. Under this blanket of fear, the defendant "gave"
her pay check to the defendant. To isolate, as the
defendant attempts to, the narrow circumstances of
the turning over of the paycheck from the whole fac-
tual scenario is totally unrealistic and unsupported by
the law. Our Supreme Court has held that while an
offender, to commit robbery, must use or threaten force
with the purpose of committing a larceny, he need not
use or threaten the force at the "precise time" he takes
that property. *State* v. *Gordon,* 185 Conn. 402, 410–11,
441 A.2d 119 (1981), cert. denied, 455 U.S. 989, 102
S. Ct. 1612, 71 L. Ed. 2d 848 (1982). The trial court
did not err in denying the defendant's motion for judg-
ment of acquittal on this basis.

The defendant also claims that there was insufficient
evidence that any force or threat of force was used *for
the purpose of* committing a larceny. "An act may have
more than one purpose and more than one effect. Thus
a jury reasonably may find that acts which compelled
a victim to engage in sexual intercourse also had the
purpose of preventing the victim's resistance to the tak-
ing of her property." Id., 411. Force is used to prevent
resistance to the taking of property or to compel deliv-
ery of property "if it induces in the victim a physical

disability or a reasonable emotional response that causes her not to resist the taking of her property [or to deliver up the property]." Id. The court did not err in denying the defendant's motion for judgment of acquittal on this ground.

The defendant's final claim is that the trial court erred in charging the jury on reasonable doubt. He concedes that he did not properly preserve this issue. He claims, however, that review is warranted under the fundamental rights—fair trial exception of *State* v. *Evans,* supra, 70. The defendant's claim does implicate the fundamental constitutional right to be found guilty only on proof beyond a reasonable doubt; *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); and the record is sufficient for us to consider the defendant's claim on its merits. Accordingly, we review the claim to see if the defendant was deprived of this right.

In instructing the jury on the state's burden of proof, the trial court gave the following definition of reasonable doubt: "And what is a reasonable doubt? A reasonable doubt is not a slight doubt, nor a possible doubt. It is not a surmise, a guess or a conjecture. It doesn't rise from feelings of sympathy or pity for anyone who may be affected by your verdict. A reasonable doubt is one which is based on the evidence and flows naturally from the evidence or lack of evidence. In short, it is doubt which is based on reason.

"Now, in this connection it's not necessary for the state to prove the absolute guilt of the defendant or guilt with certainty. However, each element which is essential to establish the defendant's guilt must be proved by facts or circumstances beyond a reasonable doubt."

According to the defendant, the language that "it is not necessary for the state to prove the absolute guilt

of the defendant or guilt with certainty" substantially reduced the state's burden of proof. He claims that this instruction permitted a finding of guilt on the more probable than not standard. We disagree with this strained interpretation of the court's language. The trial court's charge will not be "critically dissected in a microscopic search for possible error." *State* v. *Reddick,* 197 Conn. 115, 132, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986). The charge, read as a whole, required the state to prove each element of the crimes charged beyond a reasonable doubt. It instructed the jury to give the evidence the construction which favors innocence where the evidence offered is capable of two reasonable constructions and to equate reasonable doubt with a doubt based on the evidence or lack of evidence. The trial court did not err in so charging.

The defendant's reliance on *State* v. *DelVecchio,* 191 Conn. 412, 464 A.2d 813 (1983), is misplaced. Our Supreme Court in *DelVecchio* analyzed a trial court's charge analogizing the state's burden to a football field.[4] The defendant claimed that this illustration lightened the burden of proof in that it implied that more than 50 percent proof was sufficient to convict the defendant. Our Supreme Court found error and concluded that it was reversible error since it was reasonably possible that the jury was misled by the charge. Id., 425. *DelVecchio,* however, does not support the defendant's claim. In *DelVecchio,* the Supreme Court did not take issue with language almost identical to that used here: "This does not mean that the state must prove guilt beyond absolute certainty. Absolute cer-

---

[4] The trial court in *State* v. *DelVecchio,* 191 Conn. 412, 417–18, 464 A.2d 813 (1983), perhaps recovering from a weekend of television football, used the following language: " 'Reasonable doubt is not guilt beyond any doubt. You don't have to go a hundred yards for a guilty finding. You got to go somewhere, I suppose, beyond the fifty yard line; where it is in there is up to you to decide.' "

tainty is not required." *State* v. *DelVecchio,* supra, 418 n.5. Accordingly, we conclude that the defendant was not deprived of his fundamental constitutional right to be found guilty only on proof beyond a reasonable doubt.

There is no error.

In this opinion the other judges concurred.