## STATE OF CONNECTICUT *v.* RUBEN REYES
(5510)

BORDEN, DALY and O'CONNELL, Js.

Argued October 11, 1988—decision released September 12, 1989

*Suzanne Zitser,* assistant public defender, for the appellant (defendant).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief, was *Kevin McMahon,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from a judgment of conviction, after a jury trial, of two counts of the crime of robbery in the first degree, in violation of General Statutes § 53a-134 (a) (4). He claims that the trial court erred (1) in removing him from the courtroom during his trial, and (2) in its instructions to the jury. We find no error.

The jury could reasonably have found that on June 23, 1985, at approximately 11:30 p.m., the defendant, carrying a sawed-off shotgun, entered a cafe in

Hartford with an unarmed man and announced, "This is a robbery." The defendant pointed the gun at Gloria Echevarria, who was sitting behind the bar, and told her to open the cash register. She complied and the unarmed man removed approximately $325 from the cash register. At that point the defendant grabbed the bartender who was emerging from the rear of the cafe and pointed the gun at his neck. He then pushed the bartender against the bar and took approximately $180 from his pockets and wallet. Both robbers then fled and the bartender called the police who later arrested the defendant.

The defendant first claims that the trial court erred in removing him from the courtroom during argument on the state's objection to a question posed to him on direct examination by defense counsel.

The defendant had taken the witness stand on his own behalf when defense counsel inquired, "And, to your knowledge, what is the community right where the Friendship Cafe is, if you know?" The state objected to the question on relevancy grounds and the court excused the jury. Before defense counsel could respond to the objection, the state's attorney sought removal of the defendant, in order to prevent him from tailoring his testimony to the argument. Over defense counsel's objection and exception, the court agreed, ordering the defendant to leave the courtroom, justifying the expulsion on the ground that no testimony was to be taken during his absence.

The defendant claims that the trial court violated his right to be present at his trial pursuant to the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. He also argues that the court violated Practice Book §§ 967 and 968.

By contrast, the state argues that neither the state constitution nor the federal constitution mandates that the defendant be present, where, as here, a legal question concerning the admissibility of testimony was discussed.

It is well established that a case will not be decided on constitutional grounds if there is some other ground on which it can be decided. *State* v. *Williams,* 200 Conn. 310, 322, 511 A.2d 1000 (1986). While both our Supreme Court and this court have addressed the defendant's right to be present at his trial under the federal constitution no case has been found that addresses this right in relation to our rules of practice. Because those rules furnish an adequate basis for determining the issue before us, we will address it accordingly.

Three rules of practice are pertinent to the defendant's claim. Practice Book § 967 provides that a "defendant has the right to be present at the arraignment, at the time of the plea, at evidentiary hearings, *at the trial,* and at the sentencing hearing . . . ." (Emphasis added.) Practice Book § 968 reinforces the defendant's right to be present by stating that he *"must be present at the trial"* (emphasis added) unless the trial court finds that he is represented by counsel and that he has waived his right to be present. Finally, Practice Book § 970 (3) provides that the *"defendant need not be present* . . . [a]t any argument on a question of law or at any conference . . . . " (Emphasis added.)

Although we are determining this issue on rules of practice grounds, an examination of cases discussing the constitutional right to presence at trial is helpful. Our Supreme Court has held that "[a] criminal defendant has a constitutional right to be present at all critical stages of his trial." *State* v. *Simino,* 200 Conn. 113, 125, 509 A.2d 1039 (1986); *Rushen* v. *Spain,* 464 U.S.

114, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983); see *Illinois* v. *Allen,* 397 U.S. 337, 338, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970). When a situation arises in which the defendant is not present during some portion of his trial, the reviewing court must determine whether he was absent during a critical stage and whether he effectively waived his right to be present by his unexcused absence. *State* v. *Simino,* supra, 126. The latter question need not be addressed here because both parties agree that the defendant did not waive his right.

Relying on *State* v. *Simino,* supra, 128, and *State* v. *Olds,* 171 Conn. 395, 405–406, 370 A.2d 969 (1976), the state asserts that a defendant has no absolute right to be present during discussions of law. Our reading of those cases, however, indicates that such a right would arise if it is determined that his presence bears a reasonably substantial relation to his opportunity to defend. *State* v. *Olds,* supra, 406; see *Snyder* v. *Massachusetts,* 291 U.S. 97, 106, 54 S. Ct. 330, 78 L. Ed. 674 (1934).

In upholding the trial court's denial of the defendant's request to be present, the court, in *Olds,* examined the record and held that the discussion of law at issue involved pretrial motions, such as motions for production, to quash, to reduce bond and for a jury of twelve and that "there would have been no 'advantage' to having the defendant present . . . ." *State* v. *Olds,* supra.

The right to be present during a discussion of law after the trial has commenced, however, arose in *State* v. *Simino,* supra. In *Simino,* the court held that the defendant's presence was constitutionally mandated when the court was charging the jury because during that time the " 'court is required to state the fundamental legal principles applicable to criminal cases generally, as well as the material legal principles applicable

to a particular case and the application of the law to the facts. . . .' " Id., 128, quoting *People* v. *Ciaccio,* 47 N.Y.2d 431, 436, 391 N.E.2d 1347, 418 N.Y.S.2d 371 (1979). Despite the holding that the defendant had a right to be present during the jury charge, the *Simino* court concluded that the defendant had waived that right by failing to attend court that day, through no fault of the state. *State* v. *Simino,* supra.

In the present case, during the enforced absence of the defendant, the trial court sustained the state's objection to defense counsel's question to the defendant. It stated that it had previously prohibited him from inquiring into the existence of high crime and drug trafficking in and around the cafe through earlier witnesses he had subpoenaed because such evidence was irrelevant to the case. The court added that defense counsel had failed to interview those witnesses prior to their taking the stand despite the fact that they had been waiting at the courthouse to testify for approximately two days. Consequently, he did not know how those witnesses would respond to his questions and the court would not now permit him to elicit the desired but still irrelevant answers from the defendant. Defense counsel did not respond to those remarks.

On the basis of the foregoing, we conclude that the defendant's enforced absence bore a reasonably substantial relation to his opportunity to defend himself because he was precluded from hearing the court's remarks reflecting upon his counsel's preparation of his case.

Because we interpret Practice Book §§ 967 and 968 as implementing the defendant's constitutional right to be present at trial under the circumstances of the present case, we conclude that the trial court's order evicting him from the courtroom violated his right to be present at the trial pursuant to Practice Book § 967.

Although the language in Practice Book § 970 (3) appears to grant the trial court discretion in removing the defendant during questions of law, the facts here clearly demonstrate that a court acts at its peril when it elects to do so during the trial, as opposed to during arguments of pretrial motions.

The defendant urges us to adopt a per se rule of error in any case in which a defendant is ordered to leave the courtroom during the trial, except for reasons of misconduct as provided in Practice Book §§ 891 and 892. Because we strongly favor the defendant's presence at all times during the trial, the establishment of a per se rule is appealing. On the other hand, because we can envision a situation involving a purely technical violation, we conclude that the better course is a case-by-case analysis, determining harm in the light of the circumstances of each case.

Here, the colloquy that occurred in the defendant's absence involved the state's objection to a proposed question which the court sustained on relevancy grounds. The defendant does not challenge that ruling on appeal.[1] Rather, the defendant claims that his absence was harmful because he was precluded from learning of and investigating the court's remarks concerning his counsel's preparation of his defense.

An inquiry into this type of claim is more suited to a habeas corpus proceeding and would therefore be inappropriate in this appeal.[2] *State* v. *Williamson,* 206 Conn. 685, 706–707, 539 A.2d 561 (1988). Hence, we conclude that the trial court's error was harmless.

---

[1] Moreover, we note that the defendant was present at trial during an earlier argument concerning the state's objection to similar questions and, as a result, he was aware of the basis of the court's ruling that the testimony elicited was irrelevant.

[2] A habeas corpus action alleging ineffectiveness of counsel is pending at this time.

The defendant's remaining claims challenge the court's charge to the jury. He argues (1) that there was insufficient evidence to warrant the court's instruction on subsection (2) of the definition of robbery found in General Statutes § 53a-133, (2), in the alternative, that the court failed to instruct the jury that they all had to agree on which subsection of § 53a-133 the defendant violated, (3) that there was insufficient evidence to warrant the court's instruction on two statutory alternatives found in the definition of larceny as set forth in General Statutes § 53a-118, and (4) that the portion of the court's instruction concerning the taking of money from the cash register was confusing and erroneous. The defendant concedes that none of these claims of error was raised at trial and asks this court to review them under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

In defining the crime of robbery, the court read General Statutes § 53a-133, which provides in pertinent part: "A person commits robbery when . . . he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

The court then referred to the evidence detailing the taking of money from the cash register to demonstrate how either subsection may apply. Shortly thereafter, it mentioned the robbery of the bartender in order to remind the jury that the case involved two separate robbery charges.

At the outset, we note that the defendant's first two challenges to the court's charge are directed solely to the robbery of the bartender. Turning to his first claim,

he argues that the court erred in instructing the jury on the second subsection of § 53a-133 because there was no evidence that the bartender was compelled "to deliver up" his wallet and the cash. Therefore, he claims that the judgment of conviction on that count must be set aside and a new trial must be ordered. Because a defendant has a constitutional right to be acquitted unless proven guilty of each element of a charged offense beyond a reasonable doubt, we will review this claim under *State* v. *Evans,* supra. *State* v. *Williams,* 202 Conn. 349, 363, 521 A.2d 150 (1987); *State* v. *Messier,* 16 Conn. App. 455, 469, 549 A.2d 270 (1988); *State* v. *Webb,* 8 Conn. App. 620, 625, 514 A.2d 345 (1986).

" '[W]here a person may have been convicted under more than one statutory alternative, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision which the trier may have relied upon.' " *State* v. *Williams,* supra, quoting *State* v. *Marino,* 190 Conn. 639, 650–51, 462 A.2d 1021 (1983).

Both parties agree that the evidence depicted the defendant placing a shotgun to the bartender's neck, turning him around and ordering him to place his hands on the bar while the other individual went through the bartender's pants pockets retrieving his wallet and cash.

The state argues that the defendant takes an excessively restrictive view of the interpretation of subsection (2). It contends that the proof necessary to support such an instruction need only demonstrate that the victim was compelled to yield control of the property. Thus, in this case the force used placed the bartender in a position where he would be compelled to make himself accessible to a taking.

To support its argument, the state relies on *State* v. *Webb,* supra. There we said that "[a] common sense

analysis [of § 53a-133] illustrates that the two subsections overlap. . . . '[P]reventing or overcoming resistance to the taking of the property' is at least a first cousin of 'compelling the owner of such property . . . to deliver up the property.' " Id., 625. In *Webb,* we disagreed with the defendant's argument that the court erred by instructing the jury on both subsections rather than only on subsection (2) because he was charged only with " '[forcing the victim] to sign over to him her paycheck.' " Id. Rather, "while we concede that [such] language . . . is covered by subsection (2), that does not logically lead to a conclusion that subsection (1) is excluded." Id.

By contrast, the defendant urges us to follow *State* v. *Williams,* supra. There, the trial court also instructed the jury on both subsections. On appeal, the state conceded that the evidence supported an instruction only as to subsection (1). In finding reversible error, our Supreme Court stated, " '[t]he court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding.' " Id., 364, quoting *Batick* v. *Seymour,* 186 Conn. 632, 641, 443 A.2d 471 (1982).

In light of our interpretation of § 53a-133 in *State* v. *Webb,* supra, we are unpersuaded by the defendant's argument and his reliance on *State* v. *Williams,* supra. There, the victim felt a "tug" on her shoulder where the strap of her pocketbook rested and immediately lost consciousness. She testified that she "did not see the person who had taken her pocketbook, but believed he had approached her from behind." Id., 352. As the state conceded, this scenario leaves no room for any interpretation other than that the defendant's actions prevented or overcame the victim's resistance to his seizure of her pocketbook and thus supported an instruction only as to subsection (1). The evidence in the present case, however, does not permit such a clear-

cut analysis and we are satisfied that the trial court did not err by instructing the jury on both subsections.

We now turn to the defendant's alternate argument that the trial court erred in failing to instruct the jury that each member had to agree on which subsection of § 53a-133 the defendant violated with respect to the robbery of the bartender. As a result, the defendant claims that his sixth amendment right to a unanimous jury verdict was violated.

Although the defendant failed to take an exception to the absence of such an instruction, his claim is entitled to a limited review to determine whether his sixth amendment right was compromised. *State* v. *Anderson,* 211 Conn. 18, 33, 557 A.2d 917 (1989); *State* v. *Evans,* supra.

When a trial court charges the jury on statutory alternatives that are supported by the evidence and are conceptually distinct, it must also instruct the jury that each member must agree on which alternative the defendant committed if it renders a conviction. *State* v. *Anderson,* supra, 34.

We have previously determined that the evidence in this case supported a charge on both subsections of § 53a-133. Moreover, we also stated that we interpret those subsections as "first cousins" and "almost indistinguishable." *State* v. *Webb,* supra, 625, 626. Because " '[t]he jury should not be obliged to decide between two statutorily prohibited ways of committing the crime if the two ways are practically indistinguishable' "; *State* v. *Bailey,* 209 Conn. 322, 334, 551 A.2d 1206 (1988), quoting *Manson* v. *State,* 101 Wis. 2d 413, 430, 304 N.W.2d 729 (1981); we conclude that subsections (1) and (2) are not conceptually distinct and therefore a unanimity charge was not required. Thus, there was no danger of a constitutional violation and the defendant's claim is not entitled to further review. Id.;

see also *State* v. *Flynn,* 14 Conn. App. 10, 39, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988).

In his next claim, the defendant argues that the trial court erred by reading the entire definition of larceny from General Statutes § 53a-119.

The trial court instructed the jury that larceny encompasses, inter alia, a wrongful taking, obtaining or withholding of the property of the owner. The defendant contends that this instruction placed statutory alternatives before the jury which were not supported by the evidence because there was no proof in the record of an "obtaining" or "withholding."

We will not address this claim of error because the defendant failed to preserve it for appeal. *State* v. *Townsend,* 206 Conn. 621, 627, 539 A.2d 114 (1989). Moreover, our reading of the charge discloses that the court specifically apprised the jury that the state was alleging a "wrongful taking." Hence, there was no danger that their verdict was based on an improper element of larceny. Id.

The defendant argues, in this final claim, that the trial court's instruction concerning the taking of money from the cash register was confusing and erroneous. The state concedes and we agree that this issue is reviewable under *State* v. *Evans,* supra. See *State* v. *Zayas,* 195 Conn. 611, 616, 490 A.2d 68 (1985).

The thrust of the defendant's argument is that the court was inconsistent in identifying the owner of the money taken from the cash register. As a result, the jury may not have understood the elements of the crime of robbery.

"It is elementary jurisprudence that a jury charge is to be considered in its entirety and no part of it is to be critically dissected in order to find a technical inac-

curacy in one portion, read in artificial isolation from the overall charge." *State* v. *Phillips,* 17 Conn. App. 391, 394, 552 A.2d 837 (1989). We are satisfied that the jury was aware, on the basis of the evidence, that Echevarria was an employee of the cafe and was sitting behind the bar, when the defendant forced her to open the cash register, and that Morganson, who was not present, was the owner of the cafe. The court's reference to "[the robbery] against the Friendship Cafe" does not distort these facts or leave any element of the crime misunderstood. Having reviewed the charge from the standpoint of its effect on the jury in assisting it in reaching a proper verdict; *State* v. *Santiago,* 17 Conn. App. 273, 279, 552 A.2d 438 (1989); we are not persuaded by the defendant's argument.

There is no error.

In this opinion DALY, J., concurred.

BORDEN, J., concurring. I agree with the result and with much of the reasoning of the majority. I write separately, however, because I take a somewhat different view of the basis of the conclusion that the trial court erred in excluding the defendant from the trial. In my view, Practice Book § 967 is sufficient to decide this case.

It is Practice Book § 967 which governs the defendant's *right* to be present at his trial. That section, which is entitled "Right of Presence," provides that "[t]he defendant has the right to be present at the arraignment, at the time of the plea, at evidentiary hearings, *at the trial,* and at the sentencing hearing, except as provided in Sec. 966 . . . ."[1] (Emphasis added.)

By contrast, Practice Book § 968, entitled "Continued Presence Not Required," refers to those

[1] Section 966 is simply a Practice Book reference, entitled "Presence of Defendant," that encompasses §§ 967 through 970.

instances where the defendant "must be present," namely, "at the trial and at the sentencing hearing . . . ." Thus, § 968 refers to those situations where the defendant may not absent himself unless he is excused by the court. Put another way, this section refers to those situations where the defendant has no right to be absent. This reading is buttressed by § 969, which provides, in general, that if the defendant is not present "at the trial or a part thereof or the sentencing hearing and his absence has not been excused," the court may issue a capias to compel his presence.

I agree with the majority that, under the circumstances of this case, the trial court violated Practice Book § 967 by excluding the defendant from the courtroom during the trial. Although his right to be present at trial may not be absolute, the state's argument at trial, namely, that he might tailor his testimony to legal arguments made in his presence; see footnote 2, infra; was an insufficient ground on which to remove him from the witness stand and to exclude him from the courtroom while those arguments were made. There simply is no basis, either in the language of Practice Book § 967, in its purpose or in the constitutional background against which it must be read, for such an exclusion.

I agree with the majority that the transcript of what occurred in the defendant's absence indicates that the defendant was not harmed by the court's error in excluding him.[2] The fact that his attorney had earlier

---

[2] The entire incident is as follows:

"Defense Attorney:

"Q. About how far is your residence, that is where you live, from the Friendship Cafe?

"A. About five blocks.

"Q. About five blocks and so do you know the area where the Friendship Cafe is located?

been unsuccessful in attempting to present irrelevant evidence about the high incidence of crime in the area

"A. Yes.

"Q. And, to your knowledge, what is the community right where the Friendship Cafe is, if you know?

"State's Attorney: Objection.

"The Court: Read the question back.

(Last question read back)

"State's Attorney: Objection.

"The Court: What's the relevancy of that?

"State's Attorney: It's character evidence.

"Defense Attorney: I think the testimony has been received with regard to the community in which the cafe is located.

"The Court: There has been no testimony at all about the community.

"Defense Attorney: And even in the face of the fact there might not have been, I think it's relevant and probative.

"The Court: Why don't we excuse the jury.

(Jury leaves courtroom)

"The Court: There has been an objection on the ground of relevancy. You say you think it's relevant, you're going to have to tell me how it's relevant before I can allow it to go to the jury.

"Defense Attorney: Yes, your Honor.

"The Court: Because if it's not relevant—

"State's Attorney: One moment, please. I ask that the witness be—I know it's an offer of proof but if he's going to start characterizing again, I want the witness, now that he is a witness, I think he should be in the alcove because I think [the defense attorney], I think he will virtually tell him what to say.

"The Court: Okay, take the witness outside of the courtroom.

"Defense Attorney: I object to that, your Honor, and I take exception to it.

"The Court: You may take exception.

"Defense Attorney: As a witness—the jury can be excused but the witness should be allowed to remain.

"The Court: This is not testimony. That's right, you can take him out.

(The defendant leaves the courtroom)

"The Court: I think [the state's attorney's] concern is you're going to coach him from the floor.

"Defense Attorney: I'm not going to coach him from the floor.

"The Court: Well, tell me the relevancy and then you can ask him the questions. I want to know from you what the relevancy is, you're the one that says it's relevant.

"Defense Attorney: The area where this particular bar is located is known to be a high crime area, particularly with regard to the trafficking of nar-

of the cafe, through witnesses whom he may not have interviewed beforehand, must have been known to

cotics. Time and time again it's been made mention in other courts, in our criminal courts.

"State's Attorney: I can't hear you. I'd better get closer.

"Defense Attorney: That this is a particular area, particularly Lawrence Street and Grand Street, known for its criminal activity, particularly the trafficking of narcotics.

"The Court: Okay.

"State's Attorney: That's not relevant.

"The Court: What's the relevancy?

"Defense Attorney: It's a high crime area.

"The Court: So what?

"Defense Attorney: And this particular—

"The Court: That's where crime occurs and that's what the allegation is, a robbery occurred at the Friendship Cafe, which is a high crime area. So what?

"Defense Attorney: But not necessarily by this defendant.

"The Court: What does whether it's a high crime area have to do with whether he's the one who did the crime or not?

"Defense Attorney: Your Honor, I think it's relevant, that it's probative and, therefore, relevant because of the fact that this is—

"The Court: I think one of the other witnesses already testified that it's a high crime area.

"State's Attorney: I don't believe so.

"The Court: You don't think so?

"State's Attorney: I think I objected and I think it was kept out.

"The Court: Maybe but I think the question was asked but so what, so what if there are drugs dealt in that area?

"Defense Attorney: This is a foundation being laid for other questions.

"The Court: For what?

"Defense Attorney: Concerning whether some of this activity went on in this particular business establishment.

"The Court: You're trying to impeach your own witnesses, that's what you're telling me.

"Defense Attorney: I'm not impeaching my own witness.

"The Court: Those are the same witnesses whose testimony we struck.

"Defense Attorney: They were my witnesses only to the extent that I subpoenaed them. They definitely were not—

"The Court: Now, wait a minute—

"Defense Attorney:—allowed to testify in front of the jury.

"The Court: Now wait a minute. They were not allowed to testify to the jury because there was nothing probative about what their testimony was or was going to be to the jury but they were your witnesses, you subpoenaed them.

the defendant, because that had happened in his pres-
ence in the courtroom.

"Defense Attorney: Exactly.

"The Court: You brought them into this courtroom, they are your wit-
nesses and you cannot impeach them.

"State's Attorney: It's impeaching character, which the rules are even
more set on that. I would cite Tait and LaPlante the page that I've already
given to the Court. You can't impeach—the second part of that page talks
about impeaching the character and certainly characterizes someone as
being involved in drugs as character evidence.

"The Court: It says, while it is true that witnesses do not belong to any
party and may be called by either or both parties, for impeachment pur-
poses, the rules do assign a proprietary interest to witnesses. Usually there
is no question about that a witness belongs to the party who calls him to
the stand. If one side recalls a witness first called by his opponent, the Court
has the discretion to rule that the witness be deemed that of the recalling
party unless that party is seriously disadvantaged by such a ruling.

"Defense Attorney: Seriously disadvantaged by such a ruling.

"The Court: Now, you called them.

"Defense Attorney: It's prejudicial to my client.

"The Court: Excuse me, you called them and none of them were surprised,
none of them were hostile, they answered all of your questions directly and
you just couldn't do anything.

"Defense Attorney: One of the things that I think the Court has knowl-
edge of is the fact that these people never reported to me, they reported
to the State's Attorney even though—

"The Court: You never went out of your way to even question them, they
had been outside this courtroom for two days now, two and a half days.

"State's Attorney: And I will state that as an officer of the Court—

"The Court: You never went up and said, may I speak to you? You sub-
poenaed them without even knowing what their testimony was.

"Defense Attorney: Then why would they, without any form of aggra-
vation or argumentation, why did they go to the State's Attorney's Office
when they arrived at court?

"State's Attorney: Can you state that that is the truth as an officer of
the court?

"Defense Attorney: I saw them coming from upstairs.

"The Court: So what? What else is upstairs. The men's room is upstairs.
The lady's room is upstairs.

"State's Attorney: That's an incorrect characterization, in any event.

"The Court: There are several other courtrooms upstairs.

"Defense Attorney: Is the State's Attorney prepared to say these peo-
ple did not come to see him?

I agree with the majority that a violation of Practice Book § 967 should not call for a rule of reversal per se, without an inquiry into its actual harm to the defendant. See *State* v. *McNellis,* 15 Conn. App. 416, 433, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). I therefore agree that the court's error was harmless because, whether it is measured by nonconstitutional or constitutional standards of harmless error, it could not have impaired the defendant's right to defend himself, and could not have contributed to the verdict.

---

"State's Attorney: The people that came in today went to the State's Attorney's Office. Yesterday I talked to people in the hallway, they never even came to the State's Attorney's Office.

"Defense Attorney: They were not upstairs with you?

"State's Attorney: They were not with me.

"Defense Attorney: Or with any State's Attorney?

"State's Attorney: Not that I'm aware of.

"The Court: Bring in Mr. Reyes.

"Defense Attorney: But you do say that the people that came in today did come to you?

"State's Attorney: They asked why they were here and I said you have to talk to [the defense attorney].

"Defense Attorney: But, they did come see you?

"State's Attorney: They asked to know why they had to be here, you weren't here at 10 o'clock and they wanted to know why they were here.

"Defense Attorney: He had the subpoena in hand. They had my signature on it.

"State's Attorney: Were you here?

"The Court: Were you here?

"Defense Attorney: No, I was not.

"The Court: No, you saw fit to go to another court. Mr. Sheriff, bring the defendant in.

(The defendant enters the courtoom)

"The Court: Bring out the jury.

(Jury enters courtroom)"