STATE OF CONNECTICUT *v.* LORNE DYSON
(14107)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and SANTANIELLO, Js.

Argued December 12, 1990—decision released February 19, 1991

*Susan Hankins,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, for the appellee (state).

COVELLO, J. This is the appeal of the defendant, Lorne Dyson, from his conviction of accessory to manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[1] The issues presented are: (1) did the trial court properly instruct the jury regarding the mental state necessary for manslaughter in accordance

---

[1] "[General Statutes] Sec. 53a-55. MANSLAUGHTER IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved

with General Statutes §§ 53a-55 and 53a-56;[2] (2) did the trial court properly instruct the jury concerning the state's burden of proof; and (3) did the trial court properly instruct the jury concerning witnesses' credibility and the defendant's failure to testify. We conclude that the trial court's instructions were proper and affirm the conviction.

The jury might reasonably have found the following: On November 17, 1987, the victim, Otis Pierce, was shot in the head while talking with some friends in the Van Block Avenue area of Hartford. Fourteen days later, the victim died. There was evidence that the defendant was one of two assailants present in the area with a gun at the time of the shooting, that the assailants were attempting to scare the decedent and that one of them shot the victim by mistake.

The jury returned a verdict of guilty of the lesser included offense of accessory to manslaughter in the first degree in violation of § 53a-55 (a) (3) and conspiracy to commit manslaughter in the first degree. The jury found the defendant not guilty of the three attempted assault charges and conspiracy to commit assault. The trial court thereafter granted the defendant's motion for acquittal of the charge of conspiracy to commit manslaughter because conspiracy to commit a reckless manslaughter is not a cognizable crime. The trial court then sentenced the defendant to twenty

in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.

"(b) Manslaughter in the first degree is a class B felony."

[2] "[General Statutes] Sec. 53a-56. MANSLAUGHTER IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person; or (2) he intentionally causes or aids another person, other than by force, duress or deception, to commit suicide.

"(b) Manslaughter in the second degree is a class C felony."

years imprisonment on the remaining conviction. The defendant appealed to the Appellate Court. We thereafter transferred the matter to this court pursuant to Practice Book § 4023.

I

The defendant first claims that the trial court improperly instructed the jury on the mental state required for manslaughter. In support of this claim, the defendant argues that the court: (1) deviated from the language of the statute by referring to § 53a-55 (a) (3) as "reckless indifference manslaughter"; (2) improperly stated that "[t]he gist of the charge is recklessness" when referring to both first degree and second degree manslaughter; and (3) improperly instructed the jury that first degree manslaughter under § 53a-55 (a) (3) is a lesser included offense of first degree manslaughter under § 53a-55 (a) (1).

"It is well established that '[a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case.' *State* v. *Estep,* 186 Conn. 648, 651–52, 443 A.2d 483 (1982); *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); *Farlow* v. *Connecticut Co.,* 147 Conn. 644, 648, 166 A.2d 202 (1960); *Amato* v. *Desenti,* 117 Conn. 612, 617, 169 A. 611 (1933). ' "The charge is to be read as a whole and individual instructions are not to be judged in 'artificial isolation' from the overall charge. *State* v. *Reed,* 174 Conn. 287, 305, 386 A.2d 243 (1978); *State* v. *Holmquist,* 173 Conn. 140, 151, 376 A.2d 1111, cert. denied, 434 U.S. 906, 98 S. Ct. 306, 54 L. Ed. 2d 193 (1977). The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. *State* v. *Roy,* 173 Conn. 35, 40, 376 A.2d 391 (1977); *State*

v. *Mullings,* 166 Conn. 268, 274–75, 348 A.2d 635 (1974)." *State* v. *Estep,* [supra, 652].' *State* v. *Maturo,* 188 Conn. 591, 599, 452 A.2d 642 (1982)." *State* v. *Jasper,* 200 Conn. 30, 37, 508 A.2d 1387 (1986).

The defendant argues that the trial court's reference to the charge as "reckless indifference manslaughter" deviated from the language of § 53a-55 (a) (3) and confused the jury. We note that the court used the term "reckless indifference manslaughter" only once in its main charge. In this instruction, the court recited the relevant part of § 53a-55 (a) (3) and stated that the state must demonstrate that the defendant acted with extreme indifference to human life and that his conduct was reckless. The court then recited in detail the definition of recklessness. In defining second degree manslaughter, the court expressly stated that the difference between it and first degree manslaughter "is to extreme indifference to human life, on the one hand, and reckless engagement in conduct which creates a substantial risk of death, on the other hand." We conclude that the charge, taken as a whole, accurately described the necessary elements of the charged crimes and effectively differentiated between the various degrees. As a result, it is not reasonably probable that the jury could have been misled by the entire charge. *State* v. *Spates,* 176 Conn. 227, 237, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979).

The defendant next claims that the court highlighted the element of recklessness over the charge of extreme indifference to human life by stating, in reference to first degree manslaughter, that "[t]he gist of the charge is recklessness." What the court actually said was: "Now, in order for the defendant to be found guilty of this crime the State must prove beyond a reasonable doubt, one, that the defendant's conduct evinced an extreme indifference to human life, and, two, that

the defendant's conduct created a grave risk of death to another person, and, three, that the defendant caused the death of Otis Pierce. And, four, that the death was caused by the reckless conduct of the defendant. There is no element of specific intent involved in this Statute. The gist of the charge is recklessness." When read in context, the court's statement is an appropriate attempt to separate its instruction on manslaughter from its earlier instruction on the specific intent crime of murder. Furthermore, as noted above, the court expressly stated that the state must prove both the extreme indifference and recklessness elements of the statute; there is, therefore, no reason to suspect that the jury was confused by the court's instruction.

The defendant also argues that the trial court improperly charged the jury that it had to consider specific intent manslaughter under § 53a-55 (a) (1) before reckless manslaughter under § 53a-55 (a) (3). While the court's statement, standing alone, might have been inaccurate, we note that the trial court several times stated that § 53a-55 (a) (1) and (3) were of equal seriousness. Construed in its entirety the charge was not improper.

## II

The defendant's second claim is that the trial court improperly used a "two-inference" instruction concerning the state's burden of proof. The trial court stated in pertinent part: "The presumption of innocence also requires that when you consider all of the evidence—and it is capable of two reasonable interpretations, one of which is consistent with innocence, you must adopt the interpretation of innocence. The presumption remains with the defendant throughout the trial unless you are satisfied beyond a reasonable doubt of the defendant's guilt from all the evidence in the case."

The defendant cites in support of his argument the position of the Court of Appeals for the Second Circuit which has stated that "such an instruction by implication suggests that a preponderance of the evidence standard is relevant, when it is not. Moreover, the instruction does not go far enough. It instructs the jury on how to decide when the evidence of guilt or innocence is evenly balanced, but says nothing on how to decide when the inference of guilt is stronger than the inference of innocence but not strong enough to be beyond a reasonable doubt." *United States* v. *Khan,* 821 F.2d 90, 93 (2d Cir. 1987); *United States* v. *Attanasio,* 870 F.2d 809, 818 (2d Cir. 1989).

In *Kahn,* the Second Circuit Court of Appeals held that, while a "two-inference" instruction standing alone may be improper, there is no error if the state's burden of proof is otherwise properly explained. *United States* v. *Khan,* supra, 92. This, in effect, is an extension of the proposition that a jury charge must be considered in its entirety and that challenged language must be read in that context. In any event, such an instruction that principally serves to benefit the defendant is proper under our case law. See, e.g., *State* v. *Morrill,* 193 Conn. 602, 610, 478 A.2d 994 (1984), where we noted " '[i]t is, of course, true . . . that any conclusion, reasonably to be drawn from the evidence, which is consistent with the innocence of the accused must prevail. *State* v. *Guilfoyle,* 109 Conn. 124, 139, 145 A. 761 [1929].' *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591 (1955)." As acknowledged by the defendant, the trial court several times correctly stated that the state had the burden to prove each element of the crimes charged beyond a reasonable doubt. The charge as a whole correctly instructed the jury as to the state's burden of proof.[3]

---

[3] The court further stated that "[a] reasonable doubt is a doubt for which a valid reason can be assigned." The defendant did not object to this at trial. However, "[w]e have upheld a similar charge in the face of a con-

## III

The defendant's final claim is based upon the following instruction: "Again, to the subject of interested witnesses. Now, you heard mention that one or another of the witnesses is an interested witness. And on the basis of such characterization counsel has asked you to give lesser weight to such witness[es'] testimony. Obviously, the defendant himself has the primary interest in the outcome. Whether other persons are close enough to him or sufficiently dependent upon the outcome or economically or emotionally or otherwise involved with him to be considered interested is for you to decide and determine on your observation of the basis of the evidence as well as upon your observation of his attitude and conduct. He has not testified in this case so obviously some of these are—it's not possible for you to do. The whole subject of the witness interest and its affect [sic] upon his testimony is for you to decide. Again, he hasn't testified so that portion would be inapplicable."

The defendant argues that his rights under the fifth and fourteenth amendments to the United States constitution, as well as his rights under article first, §§ 8 and 9 of the Connecticut constitution, were abridged by the trial court's comments on the defendant's failure to testify and the court's comments linking the interested witnesses to the defendant. The defendant did not raise these exceptions at trial. He claims review under the doctrines presented in *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). In order to pre-

stitutional challenge in *State* v. *Derrico,* 181 Conn. 151, 170–71, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). As we said in *Derrico,* the 'instruction essentially defined a reasonable doubt as a doubt founded on reason as contrasted with a purely speculative doubt.' Id., 171." *State* v. *Findlay,* 198 Conn. 328, 346, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).

vail on these claims the defendant must meet a four-prong test. Under the fourth prong, the defendant may not prevail if the state can demonstrate that any error was harmless beyond a reasonable doubt. Id., 240.

Admittedly, the trial court initially did refer to the defendant's failure to testify. The court immediately corrected the misstatement, however, by saying that the reference to the defendant was inapplicable. Any possible prejudice resulting from these comments was eliminated by the court's subsequent, thorough instructions to the jury that it was to draw no adverse inference from the defendant's decision not to testify. We conclude that the court's curative instruction rendered any misstatement harmless beyond a reasonable doubt.

We conclude, moreover, that the court's instructions regarding the credibility of the witnesses were proper. Read in their entirety, the instructions charged the jury to weigh the credibility of all witnesses, both those of the defendant and those of the state. A similar argument was raised in *State* v. *Stepney,* 191 Conn. 233, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). In *Stepney,* the defendant's wife was singled out by name in a charge concerning the credibility of witnesses. We noted that the court has some discretion in commenting on the credibility of witnesses and determined that a credibility instruction that was "surrounded by careful qualifying language" and "repeatedly reminded the jury that [it was] the sole [judge] of credibility" was acceptable. Id., 248. Likewise, in this case the court carefully qualified its instruction and charged the jury that it was the sole judge of credibility. We conclude, consequently, that any error was harmless and that the defendant's unpreserved claims are not reviewable.

The judgment is affirmed.

In this opinion the other justices concurred.