STATE OF CONNECTICUT *v.* MICHAEL BROWN
(AC 18089)

Lavery, C. J., and Schaller and Pellegrino, Js.

Argued June 13—officially released October 17, 2000

*William B. Westcott,* special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* senior assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Elpedio Vitale,* senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Michael Brown, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4), and larceny in the second degree in violation of General Statutes §§ 53a-123 (a) (3) and 53a-8. The jury further determined that the defendant was armed with a firearm when he committed the robbery and the larceny. Consequently, the defendant was given an enhanced penalty as provided by General Statutes § 53-202k and was sentenced to a total effective term of twenty-five years imprisonment. On appeal, the defendant claims that the trial court improperly instructed the jury (1) on the standard of proof beyond a reasonable doubt, (2) on the definition of robbery and (3) concerning the findings necessary to apply the sentence enhancement provision of § 53-202k. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the disposition of this appeal. On July 27, 1996, at approximately 2:30 a.m., the victim, Alan Goodsen, attempted to visit his girlfriend's residence at 88-90 Hurlburt Street in New Haven. After receiving no response at the house, the victim drove to Ella Grasso Boulevard to look for a pay telephone. The victim traveled to the Olympia Diner at 604 Ella Grasso Boulevard where he located a telephone.[1] The victim parked his car leaving the engine running and attempted to call his girlfriend.

While the victim was on the telephone, a Chevrolet Corsica with three occupants drove up and parked next to the victim's car. The defendant, who was sitting in the front passenger seat, asked the victim if the telephone was working. The victim replied, "Yes" and proceeded toward his own vehicle. As the victim began to open his car door, the defendant got out of the Corsica holding a gun in his hand. As the defendant approached the victim, he put the gun to the victim's head and stood facing him. The victim also observed a second individual, who had been sitting in the rear passenger seat of the Corsica, get out holding a gun. This individual stood behind the victim.

The defendant, still holding the gun to the head of the victim, next proceeded to pat down the victim. The defendant remarked to the victim that "you already know what time it is, just run it," which is slang for "you already know it's a robbery." As the defendant committed the robbery, the victim remained looking at him face-to-face.

After taking the victim's wallet, which contained about $50, the defendant and the other perpetrator dis-

---

[1] The area near the pay telephone was well lit by street lights.

cussed what they should do with the victim.[2] The defendant decided to let the victim go, instructing him to "go ahead and walk, don't look back." The victim started to walk away as ordered, but took a look back at the defendant. The defendant responded by saying, "Do you want to get shot," to which the victim stated, "Don't shoot." Thereafter, the defendant and the other perpetrator got into the victim's car with the defendant in the driver's seat. Both cars, the Corsica and the victim's car, then sped away.

The victim returned to the telephone and called his mother to tell her what happened. The victim's mother then called the New Haven police department to report the crime. Several minutes later, Officer Robert Losty of the New Haven police department arrived at the victim's location. The victim provided the officer with a description of the defendant and the other details of the robbery. The victim described the defendant as a heavyset black man, about five feet and eight inches tall. Thereafter, Losty transmitted the information over his police radio.

Upon receiving information of the robbery, several police departments, including those in Milford and New Haven, responded. Shortly thereafter, police from the Milford police department spotted the victim's car traveling southbound on Interstate 95. After the police activated their overhead lights, the defendant attempted to evade police pursuit by switching from lane to lane, shutting off the headlights and accelerating to speeds close to 100 miles per hour. The defendant finally lost control of the victim's car and spun out.

The defendant jumped out of the victim's car, and members of the Milford police department proceeded

---

[2] After discovering that the victim had only $50, the other perpetrator stated to the defendant, "Just pop him, fuck it," which meant to shoot the victim. In response, the victim pleaded, "You don't have to shoot me. Let me go. Just take the car."

to chase the defendant on foot. The defendant was later apprehended in the back yard of a house on Hollister Avenue. The defendant was taken to the Milford police station, where he was positively identified by the victim as the person who had committed the robbery. The defendant's fingerprints also were found on the driver's side window of the victim's car. Additional facts will be discussed where necessary to the resolution of this appeal.

I

The defendant first claims that the court improperly shifted the burden of proof to him when it delivered the following instruction to the jury: "If you can in reason reconcile all of the facts and inferences which you find proven with any reasonable theory consistent with the innocence of the defendant, then, of course, you cannot find the defendant guilty of that crime." We disagree.

The defendant acknowledges that he failed to preserve this claim for appellate review. He argues, however, that the claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[3]

This court and our Supreme Court previously have upheld jury instructions similar or identical to the one complained of here. *State* v. *Small*, 242 Conn. 93, 115, 700 A.2d 617 (1997); *State* v. *Dawkins*, 42 Conn. App. 810, 821, 681 A.2d 989, cert. denied, 239 Conn. 932, 683 A.2d 400 (1996); *State* v. *Lopez*, 37 Conn. App. 509,

---

[3] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

513–15, 657 A.2d 647, cert. denied, 234 Conn. 902, 660 A.2d 858 (1995). Accordingly, we conclude that the claim of improper instruction fails the third prong of *Golding*.

## II

The defendant next claims that the court improperly instructed the jury on the definition of robbery. We disagree.

During the charge to the jury on the offense of robbery in the first degree, the court instructed as follows: "A person commits robbery when, in the course of committing a larceny he uses or threatens the immediate use of physical force upon another person *for the purpose of compelling the owner of the property to deliver up the property*." (Emphasis added.)

The court repeated this instruction on numerous occasions. The defendant acknowledges that he failed to raise an exception to any portion of the charge. The defendant now seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. The defendant claims that the evidence presented during the trial did not warrant a jury instruction under § 53a-133 (2). He argues that the court should have instructed under § 53a-133 (1), that is, that the defendant used or threatened the use of physical force during the commission of a larceny for the purpose of "[p]reventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking . . . ."

The defendant cannot prevail on his unpreserved claim of error because, under the third prong of *Golding*, he has failed in his burden to demonstrate that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial. See, e.g., *State* v. *Reyes*, 19 Conn. App. 695, 702–704, 564 A.2d 309, cert. denied, 213 Conn. 803, 567 A.2d 833 (1989). Moreover,

there is no practical or conceptual distinction between subdivisions (1) and (2) of § 53a-133. *State* v. *Scott*, 20 Conn. App. 513, 518–19, 568 A.2d 1048, cert. denied, 214 Conn. 802, 573 A.2d 316 (1990); *State* v. *Webb*, 8 Conn. App. 620, 624–25, 514 A.2d 345 (1986).

### III

The defendant finally claims that the court improperly (1) failed to instruct the jury that it had to make its findings under § 53-202k by the standard of proof of beyond a reasonable doubt and (2) failed to inform the jury fully of all of the elements to be considered when making a finding under § 53-202k, specifically, that it failed to instruct the jury on the definition of a firearm. We disagree.

### A

The defendant concedes that he did not properly preserve this claim for appellate review. As with the defendant's previous two unpreserved jury instruction claims, the defendant argues that review is afforded under *Golding*. We initially note that the record is adequate to review the alleged claim of error and the claim is of constitutional magnitude alleging the violation of a fundamental right. "An accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt. . . . This court has consistently held that a claim that the judge improperly instructed the jury on an element of an offense is appealable even if not raised at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 202 Conn. 349, 363, 521 A.2d 150 (1987). The defendant has, therefore, satisfied the first and second prongs of *Golding*. We must next consider whether the defendant has satisfied his burden as to the third requirement of

*Golding,* i.e., that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial.

"At the outset, we note that under . . . *Golding,* a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . Furthermore, [a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Delgado,* 50 Conn. App. 159, 171, 718 A.2d 437 (1998).

In the present case, the jury instructions, read as a whole, adequately informed the jury of the standard of proof for purposes of their findings under the sentence enhancement provision set forth in § 53-202k.

### B

The defendant alternatively claims that the failure of the court to instruct the jury, in connection with the sentence enhancement proceeding pursuant to § 53-202k, on the statutory definition of a firearm contained in General Statutes § 53a-3 (19) violated his right to due

process under both the federal and state constitutions. We disagree.

After the jury found the defendant guilty on the three count information, the court presented the following question to the jury concerning the first and third counts: "The court observes each juror has agreed [on the finding of guilty for each of the three counts alleged]. . . . Now, there is one more task for you all to perform and I'm going to pose to you two questions, and after I have done so, I'll ask you to leave the courtroom, go to the jury room, deliberate and then return with the answer to each of these questions.

"The first question relates to the first count, the robbery in the first degree, and the second question relates to the third count, larceny in the second degree.

"As to the first count, do you find that the defendant during the commission of the crime of robbery in the first degree under the first count, do you find that he was armed with and threatened the use of or displayed or represented by his words or conduct that he displayed a firearm? That's the first question, and you decide that unanimously either yes or no.

"The second question is as to the third count. As to the crime of larceny in the second degree under the third count, do you find that the defendant in the commission of said crime was armed with and threatened the use of or displayed or represented by his words or conduct that he possessed a firearm?

"Now, those are the two questions and the answer is either yes or no."

Section 53-202k requires the court to impose a five year sentence, which shall not be suspended, for any person "who commits any class A, B, or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by

his words or conduct that he possesses any firearm, as defined in section 53a-3 . . . ." The term "firearm" is defined in § 53a-3 (19) as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ."

Recognizing that he did not preserve this claim for appellate review, the defendant asks us to review the claim under *Golding.* The defendant argues that the failure of the court to instruct the jury, in connection with the sentence enhancement proceeding pursuant to § 53-202k, on the statutory definition of a firearm contained in § 53a-3 (19) violated his right to due process under both the federal and state constitutions. The state does not dispute that at no point in the supplemental charge did the court instruct the jury on the definition of a firearm. The state argues that the claim fails the third and fourth prongs of *Golding,* namely, that the defendant cannot demonstrate that it is reasonably possible that the jury was misled by the missing instruction or, alternatively, that any error was harmless. The state contends that the jury could not have been misled by the absence of a definition of firearm because the term is "extremely broad and self-evident," and because the plain and ordinary meaning of the word is obvious and does not conflict with the statutory definition. We agree with the state.

Pursuant to the sentence enhancement provisions of § 53-202k, the state was not required to demonstrate that the object the defendant was holding was actually capable of discharging a shot. See *State* v. *Tinsley,* 47 Conn. App. 716, 721–22, 706 A.2d 1008, cert. denied, 244 Conn. 915, 713 A.2d 833 (1998). All the state had to demonstrate was that the defendant represented, by words or conduct, that the object he was holding was capable of discharging a shot. During the course of the robbery, the defendant, while holding a gun, stated to

the victim, "Do you want to get shot." Also during the robbery, the defendant's accomplice ordered the defendant to "just pop him." On the basis of those statements and the conduct by the defendant, the state demonstrated that the defendant represented that the gun was capable of discharging a shot. It is not improper for a trial court to refuse to define terms that are " 'used and might be understood in their ordinary meanings.' *State* v. *Maresca*, 173 Conn. 450, 460, 377 A.2d 1330 (1977)." *State* v. *Lewtan*, 5 Conn. App. 79, 85, 497 A.2d 60 (1985).

The statutory definition of "firearm" is plain and obvious, and, thus, the jury could not have been misled by the absence of an instruction specifically defining "firearm." We therefore conclude that the defendant's claim fails under the third prong of *Golding* because the defendant has failed to demonstrate that it is reasonably possible that the jury was misled by the failure of the court to define the term "firearm" for purposes of the sentence enhancement provision set forth in § 53-202k.

The judgment is affirmed.

In this opinion the other judges concurred.