STATE OF CONNECTICUT *v.* MICHAEL BROWN
(SC 16423)

Sullivan, C. J., and Norcott, Katz, Palmer and Ronan, Js.

Argued October 24, 2001—officially released March 26, 2002

*William B. Westcott*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio Vitale*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, C. J. The defendant, Michael Brown, appeals from the judgment of the Appellate Court

upholding an enhanced penalty imposed pursuant to General Statutes § 53-202k[1] pursuant to his convictions of robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4)[2] and 53a-8,[3] conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a)[4] and 53a-134 (a) (4), and larceny in the second degree in violation of General Statutes §§ 53a-123 (a) (3)[5] and 53a-8. *State* v. *Brown*, 60 Conn. App. 487, 760 A.2d 111 (2000). The sole issue in this certified appeal is whether the trial court's failure to instruct the jury on the definition of a firearm under General Statutes § 53a-3 (19),[6] when it instructed the

[1] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[4] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[5] General Statutes § 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny, as defined in section 53a-119, and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

[6] General Statutes § 53a-3 (19) provides: " 'Firearm' means any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ."

jury on the elements of commission of a class A, B or C felony with a firearm under General Statutes § 53-202k, violated the defendant's due process rights.[7] We conclude that it did not, and, accordingly, we affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts. On July 27, 1996, at approximately 2:30 a.m., the victim, Alan Goodsen, attempted to visit his girlfriend at her residence in New Haven. *State* v. *Brown*, supra, 60 Conn. App. 489. After receiving no response at the house, the victim drove to a public telephone at the Olympia Diner on Ella Grasso Boulevard. The victim parked his car, left the engine running and attempted to call his girlfriend. Id.

While the victim was on the telephone, a Chevrolet Corsica with three occupants drove up and parked next to the victim's car. The victim hung up the telephone and walked between the cars toward the driver's door of his car. The Corsica was pointed in the direction opposite to that of the victim's car, so that the victim was between the driver's side of his car and the passenger side of the Corsica. The defendant, who was sitting in the front passenger seat of the Corsica, asked the victim if the telephone was working. The victim replied, " 'Yes,' " and continued toward the door of his own car. Id. As the victim began to open the door, the defendant got out of the Corsica with a gun in his hand. The defendant approached the victim, stood facing him and put the gun to his head. A second individual, who had been sitting in the rear passenger seat of the Corsica

[7] We granted the defendant's petition for certification to appeal to this court, limited to the following issue: "Whether the Appellate Court correctly determined that it was not necessary for the trial court to instruct the jury on the definition of a firearm under General Statutes § 53a-3 as part of the trial court's instructions on the sentence enhancement provisions of General Statutes § 53-202k?" *State* v. *Brown*, 255 Conn. 905, 906, 762 A.2d 910 (2000).

and who was also holding a gun, got out of the Corsica and stood behind the victim. Id.

The defendant said to the victim, " '[Y]ou already know what time it is, just run it,' " which the victim testified was slang for " 'you already know it's a robbery.' " Id. Then, holding the gun to the victim's head, the defendant patted him down, probed his pockets and took his wallet, which contained about $50. The victim was looking face-to-face at the defendant throughout the robbery. Id.

When the defendant and the second individual discovered that the victim only had $50 in his wallet, the individual standing behind the victim said to the defendant, " 'Just pop him. Fuck it.' " Id., 490 n.2. Recognizing this as an instruction by the second perpetrator to the defendant to shoot the victim, the victim responded, " 'You don't have to shoot me. Let me go. Just take the car.' " Id.

The defendant instructed the victim to " 'go ahead and walk, don't look back.' " Id., 490. The victim complied by walking away with his hands on top of his head. When the victim did look back at the defendant, the defendant threatened, " 'Do you want to get shot,' " to which the victim replied, " 'Don't shoot.' " Id. The defendant then got into the driver's seat of the victim's car and the second individual got into the passenger seat. The Corsica and the victim's black Mazda sped away. Id.

The victim returned to the telephone, called his mother and told her what had happened. She reported the crime to the New Haven police department. Several minutes later, Officer Robert Losty of the New Haven police department arrived at the Olympia Diner. The victim provided the officer with details of the robbery and a description of the defendant and the vehicles

involved. Id. Losty transmitted this information over his police radio.

Several police departments, including those in Milford and New Haven, received this information. Shortly thereafter, a Milford police officer spotted a black Mazda matching the description of the victim's car traveling southbound on Interstate 95 near a blue Chevrolet Corsica. The police officer followed the black Mazda, read the license plate and positively identified it as the victim's car. When the Milford officer activated his overhead lights in an effort to pull over the Mazda, the defendant attempted to evade the police by switching from lane to lane, shutting off the headlights and accelerating to speeds close to 100 miles per hour. Id. The chase proceeded on and off the highway until the defendant finally lost control of the victim's car, spun out and stalled.

The defendant and the second perpetrator jumped out of the victim's car, and members of the Milford police department chased both men on foot. During the chase, the second individual fired several shots in the direction of the police, but the police did not immediately return fire. When the defendant and the second individual separated, the police chased and exchanged gunfire with the second individual, who escaped by committing another carjacking. Because the police last had seen the defendant running along Hollister Avenue, the police searched the yards of the houses on that street. The defendant was apprehended while attempting to enter the back door of one of those houses. At the scene of the arrest, the Milford police officer who first spotted the vehicles on Interstate 95 identified the defendant as the driver of the black Mazda. Later, at the Milford police station, the victim identified the defendant as the person who had committed the robbery. The defendant's fingerprints were later

found and identified on the driver's side window of the victim's car.

The defendant was not armed at the time of his arrest. The second individual, who escaped from the police on the night of the robbery, was later identified and his home was searched. During the search, the police discovered two firearms, both matching the victim's description of the guns used in the robbery.

Following a jury trial, the defendant was convicted of robbery in the first degree, conspiracy to commit robbery in the first degree, and larceny in the second degree. The jury also found that the defendant had used a firearm in the commission of the crime, causing him to be subject to an enhanced penalty pursuant to § 53-202k.

The defendant was thereafter sentenced to a total effective term of twenty-five years imprisonment. The defendant appealed to the Appellate Court claiming that "the trial court improperly [had] instructed the jury (1) on the standard of proof beyond a reasonable doubt, (2) on the definition of robbery and (3) concerning the findings necessary to apply the sentence enhancement provision of § 53-202k." Id., 488. The Appellate Court rejected all three claims and affirmed the judgment of the trial court. Id., 487. We granted the defendant's petition for certification to appeal to this court limited to the question of whether the trial court was required to define "firearm" when instructing the jury on the sentence enhancement provision of § 53-202k. *State* v. *Brown*, 255 Conn. 905, 762 A.2d 910 (2000).

At trial the defendant neither objected to the charge as given by the trial court nor specifically requested that the jury be instructed on the statutory definition of a firearm. Practice Book § 42-16. Accordingly, his claim is unpreserved, and we review it under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). In *Golding*,

we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." Id., 240.

In the present case, the record is adequate for review of the disputed jury charge, satisfying the first criterion of *Golding*. The defendant's claim also satisfies the second criterion of *Golding* because "[a]n improper instruction on an element of an offense . . . is of constitutional dimension."[8] (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 235, 710 A.2d 732 (1998). The defendant's claim fails under *Golding*'s third prong, however, because we conclude that the trial court's failure to define firearm in the instructions

---

[8] While technically commission of a class A, B or C felony with a firearm is not a separate offense, sentence enhancement under § 53-202k triggers constitutional due process protections. *State* v. *Montgomery*, 254 Conn. 694, 737, 759 A.2d 995 (2000) (holding trial court violated defendant's due process rights by improperly failing to instruct jury on elements of § 53-202k, although failure was harmless error); *State* v. *Velasco*, 253 Conn. 210, 214, 751 A.2d 800 (2000) (vacating sentence enhancement because trial court violated defendant's due process rights by failing to instruct jury on § 53-202k); *State* v. *Gerardi*, 237 Conn. 348, 356–61, 677 A.2d 937 (1996) (holding trial court violated due process safeguards by instructing that presence of unregistered gun in vehicle created rebuttable presumption gun was used offensively in commission of crime).

to the jury was not a constitutional violation that deprived the defendant of a fair trial.

"It is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case." (Internal quotation marks omitted.) *State* v. *Dyson*, 217 Conn. 498, 501, 586 A.2d 610 (1991). Therefore, "[t]he charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) Id. "The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id. "As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 485, 668 A.2d 682 (1995).

The defendant claims that the trial court's failure to instruct the jury on the definition of a firearm deprived him of a fair trial.[9] There are two elements to § 53-202k. The first element is that the defendant has committed a class A, B or C felony. The instructions to the jury regarding § 53-202k were given after the jury returned a guilty verdict on robbery in the first degree, a class B felony, and larceny in the second degree, a class C

---

[9] In *State* v. *Velasco*, 253 Conn. 210, 214, 751 A.2d 800 (2000), this court concluded that § 53-202k requires the jury, rather than the trial court, to decide whether the defendant used or threatened to use a firearm when committing the underlying crime. Failure to instruct the jury on § 53-202k, however, does not automatically result in a constitutional violation that deprives a defendant of a fair trial. See *State* v. *Montgomery*, 254 Conn. 694, 737–38, 759 A.2d 995 (2000) (court's failure to charge on elements of § 53-202k was harmless error because jury findings included conclusion defendant shot victim).

felony. This verdict triggered the trial court's instructions on sentence enhancement and made it unnecessary to instruct the jury specifically on the first element of § 53-202k. The second element of § 53-202k is that the defendant used, was armed with and threatened the use of, displayed, or represented by his words that he possessed a firearm as "firearm" is defined in § 53a-3 (19). Accordingly, in an interrogatory, the trial court asked the jury to determine whether the defendant "was armed with and threatened the use of or displayed or represented by his words or conduct that he possessed a firearm," when he committed the robbery and larceny. The defendant did not request that the trial court instruct the jury on the definition of a firearm as defined in § 53a-3 (19). The jury responded affirmatively and unanimously to the trial court's interrogatory.

The defendant claims that the trial court's failure to instruct the jury on the § 53a-3 (19) definition of a firearm rendered the jury instruction constitutionally defective. Although it is generally preferable for a jury to be instructed on the statutory definition of a word where one exists, a trial court is not necessarily required to do so. *State* v. *Spillane*, 255 Conn. 746, 755, 770 A.2d 898 (2001). Specific words in a statute need not be defined if they are being used and understood in their ordinary meaning. See id.; *State* v. *Maresca*, 173 Conn. 450, 460, 377 A.2d 1330 (1977). "[T]he definition of words in our standard dictionaries is taken as a matter of common knowledge which the jury is supposed to possess." *State* v. *Asherman*, 193 Conn. 695, 737, 478 A.2d 227 (1984), cert. denied, 450 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). If this commonly understood meaning of the word, as found in a dictionary and presumably applied by the jury, is substantially the same as the statutory definition, then the failure of the trial court to give the statutory definition could not

have had any effect on the jury deliberations. See *State v. Spillane*, supra, 755.

Section 53a-3 (19) provides that, " 'Firearm' means any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged . . . ." This definition requires that a firearm be (1) a weapon, with a list of examples, and (2) capable of discharging a shot. The commonly understood meaning of "firearm," found in Merriam-Webster's Collegiate Dictionary (10th Ed.), is "a weapon from which a shot is discharged by gunpowder . . . ." This commonly understood meaning of the word comprises the same two elements as the statutory definition—a firearm is a weapon capable of discharging a shot. Therefore, the dictionary definition that we presume was applied by the jury and the definition found in § 53a-3 (19) are essentially the same. Under these circumstances, no constitutional violation could have resulted from the trial court's failure to give the statutory definition to the jury.

The defendant also argues that, because the statutory definition of a firearm is a weapon from which a shot may be discharged, the state was required to prove that the gun the defendant used in the robbery was capable of discharging a shot. The state contends that the defendant represented by his words and conduct that the weapon in his hand was capable of discharging a shot[10] and, therefore, was a firearm as defined by our statutes, which in turn makes the defendant subject to the sentence enhancement provision of § 53-202k. The defendant counters that it is also possible that the jury applied § 53-202k because it found that the defendant, "use[d], or [was] armed with and threaten[ed] the use of, or display[ed]" a firearm; General Statutes § 53-202k; in

---

[10] The victim testified that the defendant and the second perpetrator each made references to shooting the victim during the robbery.

which case the state was required to prove that the defendant used a weapon from which a shot could be discharged.

We conclude that the state was not required to prove that the gun held by the defendant was capable of discharging a shot. First, the statements by the defendant and the second perpetrator relative to shooting the victim were representations that the gun in the defendant's hand could be fired, and therefore representations that the gun was a firearm as defined by statute. Because of those representations, the jury properly could have applied § 53-202k without the state having proved that the gun could be fired.[11] Second, the sentence enhancement provision properly may be applied to the defendant because we do not distinguish between the principal and an accessory when applying the sentence enhancement provision for the use of a firearm in the commission of a crime. See *State* v. *Davis*, 255 Conn. 782, 792, 772 A.2d 559 (2001) ("[T]he defendant is subject to the enhancement penalty that the principal also would have received had he been caught and convicted. For purposes of legal analysis, it is irrelevant that the defendant did not actually possess the gun."). In the present case, the second perpetrator fired several shots at the police during the foot chase, which establishes that he used a weapon from which a shot could be discharged. The second perpetrator's gun, therefore, satisfied the statutory definition of a firearm and both

---

[11] Not only did the defendant in the present case specifically represent that he had a gun, but his statement and that of the second perpetrator also represented that the gun held by the defendant could be fired. Such explicit representations that a gun is capable of firing a shot, however, may not always be necessary in order to apply the sentence enhancement provision of § 53-202k. It may be that brandishing a gun as a show of force during a crime indicates to the victim that the gun may be fired and therefore satisfies the statutory definition of a firearm and subjects a defendant to sentence enhancement. That is not the question before us in this case, however, and we leave it for a later time.

the second perpetrator and the defendant are subject to sentence enhancement under § 53-202k because the second perpetrator "use[d], or [was] armed with and threaten[ed] the use of, or display[ed]" a firearm. Accordingly, we conclude that the defendant's claim fails under the third prong of *State* v. *Golding*, supra, 213 Conn. 239–40.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.