## STATE OF CONNECTICUT *v.* ETHAN S. ZAPADKA

Superior Court, Judicial District of Tolland
File No. CR-03-0078263S

Memorandum filed September 27, 2004

*Karen A. Goodrow*, public defender, for the defendant.

*Elizabeth C. Leaming*, supervisory assistant state's attorney, for the state.

DYER, J. Ethan S. Zapadka, the defendant, is charged with criminal possession of a firearm in violation of General Statutes § 53a-217. He was arrested pursuant to a warrant that was signed by the court, *Fuger, J.*, on December 18, 2002.

On June 28, 2004, the defendant filed a motion to dismiss that is based on the provisions of Practice Book § 41-8 (5), (8) and (9), General Statutes § 54-56, the sixth and fourteenth amendments to the United States constitution, and article first, §§ 6, 7 and 8, of the constitution of Connecticut.

The defendant's legal argument is based on claims that the replica antique pistol he allegedly possessed was not a "firearm" within the meaning of the state

statutes and that it was exempt from the statutory prohibition set forth in § 53a-217. Accordingly, he claims that the charge should be dismissed because he has not committed an offense.

A hearing on the motion was held on July 20, 2004. Both parties also submitted memoranda of fact and law. The court has carefully considered the comprehensive and instructive oral and written arguments of both counsel.

The court notes that although the defendant's motion alleges grounds for dismissal under Practice Book § 41-8 (5) ("[i]nsufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial") and Practice Book § 41-8 (9) ("[a]ny other grounds"), he may not properly raise those claims under a pretrial motion to dismiss. Practice Book § 41-9 provides: "No defendant . . . who has been arrested pursuant to a warrant may make a motion under subdivisions (5) or (9) of Section 41-8." Because the defendant was arrested on a warrant reviewed and approved by Judge Fuger, a motion to dismiss predicated on those grounds is barred.

The defendant has also moved for dismissal under § 54-56, which provides: "All courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over informations and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is not sufficient evidence or cause to justify the bringing or continuing of such information or the placing of the person accused therein on trial." General Statutes § 54-56. Although § 54-56 appears on its face to conflict with the provisions of Practice Book § 41-9, our Appellate Court has ruled that the insufficient evidence and insufficient cause grounds of that statute may not be raised

through a pretrial dismissal motion in a case in which the defendant was arrested on a warrant signed by a judge. See *State* v. *Dills*, 19 Conn. App. 495, 563 A.2d 733 (1989). Hence, a motion to dismiss may not be brought in the present matter under § 54-56.

The defendant has also invoked Practice Book § 41-8 (8) ("the law defining the offense charged is unconstitutional or otherwise invalid") and contends that dismissal should be granted under the sixth and fourteen amendments to the United States constitution and article first, §§ 6, 7 and 8, of the constitution of Connecticut.

In both his memorandum and oral argument, however, the defendant failed to explain how § 53a-217 is unconstitutional or otherwise invalid on its face. Accordingly, the court will not consider those grounds.

The defendant's claim that possession of a replica antique pistol is not prohibited by § 53a-217 appears to relate to Practice Book § 41-8 (2), which allows a defendant to move for dismissal on the basis of "[d]efects in the information including failure to charge an offense . . . ." The court will interpret the defendant's motion to dismiss as a claim raised under Practice Book § 41-8 (2).

I

FACTUAL FINDINGS

The state alleges that the defendant was convicted of larceny in the third degree, in violation of General Statutes § 53a-124, on October 30, 2000. The court takes judicial notice of the fact that larceny in the third degree is a class D felony.

The following additional facts are not disputed by the parties. During 2001, the defendant purchased a black powder .44 caliber replica antique pistol through a mail order company. State law does not require the registration of this replica. The pistol is a revolver and

is capable of firing six rounds. It does not fire modern rimfire or conventional centerfire ammunition. Rather, rounds are discharged when the gun's firing mechanism strikes individual percussion caps that ignite separate black powder charges in the revolver's cylinder. The pistol was loaded and stored between the mattresses of a bed at the defendant's residence.

On June 11, 2002, the defendant's wife retrieved the loaded pistol and fatally shot herself in the head with it. The defendant was subsequently arrested on the charge of criminal possession of a firearm.

II

DISCUSSION

General Statutes § 53a-3 provides in relevant part: "Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . . (19) 'Firearm' means any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded, from which a shot may be discharged . . . ."

As it pertains to the present case, § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and . . . has been convicted of a felony . . . . For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

The defendant contends that the replica antique pistol that he allegedly possessed is not a firearm within the meaning of §§ 53a-3 and 53a-217. He maintains that the replica antique pistol does not discharge a gunshot, as required by § 53a-3 (19). In support of that argument, the defendant refers to the language of General Statutes § 29-33 (f), which exempts antique pistols and revolvers, and replicas thereof from Connecticut's pistol sale and

pistol permit laws. Section 29-33 (f) provides: "The provisions of this section shall not apply to antique pistols or revolvers. An antique pistol or revolver, for the purposes of this section, means any pistol or revolver which was manufactured in or before 1898 and any replica of such pistol or revolver provided such replica is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition except rimfire or conventional centerfire ammunition which is no longer manufactured in the United States and not readily available in the normal channel of commercial trade."

The defendant argues that because the weapon in question discharges a projectile propelled by a powder charge, instead of a bullet from a fixed cartridge, it does not fire a "shot" within the statutory meaning of § 53a-3 (19). He asserts that because the replica antique pistol expels ammunition that exempts it from the provisions of § 29-33 (f) et seq., he is not prohibited from possessing it under § 53a-217. The court is not persuaded.

Although the defendant urges the court to view the provisions of §§ 29-33 (f), 53a-217 and 53a-3 (19) as constituting a homogenized statutory scheme, the court declines to do so.

Section § 53a-3 clearly indicates that its definition of "firearm" applies "when used in this title . . . ." The title referred to is the Connecticut Penal Code, which includes § 53a-217. Similarly, § 29-33 (f) notes that its definitions of the words "pistol" and "revolver" are "for the purposes of this [the handgun sale and permit statutes] section . . . ." Section 53a-217 was enacted to prohibit all of the convicted felons in this state from possessing firearms and electronic defense devices. Section 29-33, and other related statutes, regulate the lawful sale, transfer, delivery and carrying of handguns in Connecticut. The plain and unambiguous terms of the

two statutes indicate that they have distinct statutory purposes and that their provisions are not interdependent.

This court attaches great significance to the fact that the definition of "firearm" contained in § 53a-3 (19) is not limited to pistols or revolvers. In addition to handguns, it also lists sawed-off shotguns, machine guns, rifles, shotguns and any *"other weapon . . . whether loaded or unloaded from which a shot may be discharged . . . ."* (Emphasis added.) General Statutes § 53a-3 (19). Because the definitions set forth in § 53a-3 (19) are incorporated into § 53a-217, it is clear that the General Assembly desired to prohibit convicted felons from possessing any type of lethal firearm.

The fact that the replica antique pistol in question fired a .44 caliber ball propelled by a black powder charge, instead of a bullet from a fixed cartridge, does not exempt the weapon from the statutory prohibition of § 53a-217.

In considering the language of § 53a-3 (19), our Supreme Court stated that "[t]he commonly understood meaning of 'firearm,' found in Merriam-Webster's Collegiate Dictionary (10th Ed.), is 'a weapon from which a shot is discharged by gunpowder . . . .' " *State* v. *Brown,* 259 Conn. 799, 809, 792 A.2d 86 (2002). The Supreme Court determined in *Brown* that the dictionary definition and the definition found in § 53a-3 (19) were "essentially the same." Id. Additionally, the Supreme Court has also stated that "any weapon from which a shot may be discharged meets the statutory definition of the term 'firearm.' " *State* v. *Tomlin,* 266 Conn. 608, 626, 835 A.2d 12 (2003).

Although the word "shot" is not defined by § 53a-3 (19), the court finds that its common and ordinary meaning applies. Merriam-Webster's Collegiate Dictionary (10th Ed.) defines a "shot" as "something propelled

by shooting: esp[ecially] small lead or steel pellets
. . . ."

The court finds that on June 11, 2002, the replica antique pistol allegedly possessed by the defendant was fired and that it propelled via gunpowder a gunshot that mortally wounded the defendant's spouse. Accordingly, the court finds that the gun in question was a pistol, revolver or other weapon from which a gunshot could be discharged, as defined by § 53a-3 (19).

The defendant also refers to federal legislation and case law in arguing that the prohibitions of § 53a-217 do not apply to him. The defendant essentially makes three arguments: (1) that federal courts have consistently held that antique guns are not firearms for purposes of criminal liability; (2) that § 29-33 (f), the Connecticut law that defines antique pistols and revolvers, mirrors its federal counterpart; and (3) that by analogy to the federal statutory framework, the term "shot" means fixed ammunition and, therefore, the pistol in the present case does not fall under the definition of § 53a-3 (19). The court has considered, but rejects, these arguments.

Although 18 U.S.C. § 921 (a) (3) exempts antique firearms from its definition of firearms, § 53a-3 (19) does not. The state of Connecticut has a compelling public safety interest in preventing its convicted felons—persons with a demonstrated history of poor judgment and serious illegal misconduct—from possessing any type of weapon capable of firing a gunshot. The defendant's analogy to the federal law fails to convince this court that our legislature could not advance that valid purpose by enacting §§ 53a-217 and 53a-3 (19).

The defendant's other claim is that § 53a-217 implicitly includes an exception for antique guns and replicas. The defendant argues that although § 53a-217 does not explicitly contain such an exception, the legislature

intended for that section to be read consistently with General Statutes §§ 29-33 and 29-35, which contain such an exception. The court does not agree.

As noted previously, this court finds that title 29 and title 53a have disparate statutory goals. The primary purpose of § 29-35 is "to restrict the possession of unlicensed handguns in the public sphere." *State* v. *Lutters*, 270 Conn. 198, 204, 853 A.2d 434 (2004). The provisions of § 53a-217, on the other hand, are intended to keep all firearms and electronic defense weapons away from felons. See *State* v. *Robinson*, Superior Court, judicial district of Litchfield, Docket No. CR-99-0099216 (March 22, 2001) (*Agati, J.*), in which the court ruled that the legislature intended through the enactment of § 53a-217 to make it illegal for convicted felons to possess any type of firearm.

Other case law supports the conclusion that this court should not view the criminal possession statute and the pistol permit and sales laws as being meshed into a solitary statutory scheme. See, for example, *State* v. *Delossantos*, 211 Conn. 258, 273–75, 559 A.2d 164, cert. denied, 473 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989), in which our Supreme Court held that the definition of "firearm" in § 53a-3 (19) did not apply to the term "revolver" as used in General Statutes § 29-38. See also *State* v. *Hill*, 201 Conn. 505, 523 A.2d 1252 (1986), in which the Supreme Court stated that "[b]ecause § 53a-3 *expressly provides* that the definitions contained therein 'have the following meaning when *used in this title*' . . . it appears the legislature intended to restrict the scope of this provision to Title 53a only." (Emphasis added.) Id., 515 n.7.

As noted previously, the language of §§ 53a-217 and 53a-3 (19) indicates the legislative intent to ban felons from possessing all types of guns, including any "other weapon . . . from which a shot may be discharged

. . . ." General Statutes § 53a-3 (19). The court finds it improbable, therefore, that the General Assembly intended to create an exception to the criminal possession statute that would permit serious offenders to arm themselves with large caliber, multiple gunshot, operational replica antique pistols.

The legislative history cited by the state in its memorandum of law appears to contradict the defendant's assertion that Connecticut's antique firearms legislation must be read in concert with Penal Code sections such as § 53a-217. Furthermore, if our General Assembly wanted to exempt antique firearms and replicas from the provisions of § 53a-217, it would have done so. See, e.g., *State* v. *Lutters*, supra, 270 Conn. 213 ("[i]f the legislature had intended to exempt taxicabs from the provisions of § 29-38, it easily could have expressed such an intent"); *State* v. *Russo*, 259 Conn. 436, 450, 790 A.2d 1132 (if legislature intended to limit access by law enforcement personnel to records of prescriptions for controlled substances "it easily could have expressed that intent"), cert. denied, 537 U.S. 879, 123 S. Ct. 79, 154 L. Ed. 2d 134 (2002); *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 119, 830 A.2d 1121 (2003) (court "not permitted to supply statutory language that the legislature may have chosen to omit" [internal quotation marks omitted]).

The defendant's claim of an implicit "antique gun exception" to the prohibitions of § 53a-217 is refuted by both case law, and by the plain and unambiguous language of the statutes at issue. Accordingly, this ground for dismissal also fails.

### III

### CONCLUSION

The court finds that the defendant has not established that the information in the present case fails to charge

an offense or is otherwise legally defective. Therefore, the defendant's motion to dismiss is hereby denied.